NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2016 VT 117

No. 2014-048

| State of Vermont | Supreme Court |
| --- | --- |
| | |
| | On Appeal from |
| v. | Superior Court, Orleans Unit, |
| | Criminal Division |
| | |
| Michael Rondeau | December Term, 2015 |

Brian L. Burgess, J., Specially Assigned

Christopher C. Moll, Orleans County Deputy State's Attorney, Newport, for Plaintiff-Appellee.

Matthew F. Valerio, Defender General, and Marshall Pahl, Appellate Defender, Montpelier, for Defendant-Appellant.

PRESENT: Reiber, C.J., Dooley, Skoglund, Robinson and Eaton, JJ.

¶ 1. **SKOGLUND, J.** Defendant Michael Rondeau appeals his convictions for two counts of aggravated sexual assault, which were based on an information citing statutes not yet in effect at the time of the alleged criminal acts. Resolution of his appeal requires us to answer three related questions: first, whether defendant's convictions under the statutes listed in the information violated the Ex Post Facto Clause; second, whether the sentencing court could, post-verdict and sua sponte, amend the information to list statutes in effect when the alleged acts occurred; and finally, whether the original unamended information provided sufficient notice to sustain

defendant's convictions under the statutes in effect when defendant's alleged criminal conduct occurred. Because we conclude that defendant's convictions under the listed statutes violated the Ex Post Facto Clause, that the sentencing court lacked the authority to sua sponte amend the information after trial, and that the original, unamended charging documents provided defendant with insufficient notice of the charges, we vacate defendant's convictions.

¶ 2. In March 2011, the State charged defendant with two counts of aggravated sexual assault. The information described the charges as follows. Count One of the information alleged that defendant committed aggravated sexual assault in violation of 13 V.S.A. § 3253(a)(8) at some time between October 1989 and October 11, 1997, when the complainant was under thirteen years old and defendant was at least eighteen years old. Under the first count, defendant faced a minimum ten-year sentence, without possibility of early release, and a maximum sentence of life in prison. Count Two of the information charged defendant with violating 13 V.S.A. § 3253a(a)(8), or aggravated sexual assault of a child as part of a common scheme, during the period between October 12, 1997, and October 11, 2000, when defendant was at least eighteen and the complainant was under sixteen. Under this count, defendant faced a minimum twenty-five-year sentence, without possibility of early release, and a maximum of life in prison. A jury convicted defendant on both counts on May 31, 2013.

¶ 3. During the subsequent sentencing hearing on October 25, 2013, the sentencing court raised, for the first time, significant issues surrounding the charging information and defendant's conviction. Specifically, the sentencing court noted that, although defendant had been charged and convicted pursuant to an information that listed the 2013 versions of § 3253(a)(8) and § 3253a(a)(8), the charged conduct occurred approximately a decade before the current statutes

2

were enacted. The aggravated sexual assault statute was first enacted in 1977,[1] amended in 1990,[2] and then amended again in 2006[3]; as a result, the conduct charged in Count One spanned two versions of the aggravated sexual assault statute, neither of which was the version that was listed in the information. Similarly, aggravated sexual assault of a child as part of a common scheme was not enacted until 2009[4]; thus, defendant was charged and convicted of violating a statute that

---

[1] The 1977 version defining aggravated sexual assault read in full: "A person who violates section 3252 of this title [sexual assault] and causes the other person serious bodily injury shall be imprisoned for not more than 25 years, or fined not more than $15,0000.00, or both." 1977, No. 51, § 1.

[2] In conjunction with an amendment to the basic sexual assault statute, the version of aggravated sexual assault enacted in 1990 greatly expanded the aggravated sexual assault definition to nine subsections, including § 3253(a)(8), which read, "A person commits the crime of aggravated sexual assault if the person commits sexual assault under any one of the following circumstances: . . . (8) The victim is under the age of 10 and the actor is at least 18 years of age." 1989, No. 293 (Adj. Sess.), § 6.

[3] The 2006 version of aggravated sexual assault kept the nine subsections introduced in 1990, including § 3253(a)(8), amending it to read, "A person commits the crime of aggravated sexual assault if the person commits sexual assault under any one of the following circumstances: . . . (8) The victim is under the age of 13 and the actor is at least 18 years of age." 2005, No. 192 (Adj. Sess.), § 10.

[4] The relevant provision of § 3253a prohibits aggravated sexual assault of a child as part of a common scheme and reads,

> A person commits the crime of aggravated sexual assault of a child if the actor is at least 18 years of age and commits sexual assault against a child under the age of 16 in violation of section 3252 of this title [sexual assault] and least one of the following circumstances exists: . . . (8) The victim is subjected by the actor to repeated nonconsensual sexual acts as part of the same occurrence or the victim is subjected to repeated nonconsensual sexual acts as part of the actor's common scheme and plan.

The structure and text of the statute prohibiting aggravated sexual assault of a child as part of a common scheme mimics a similar subsection in the aggravated sexual assault, § 3253(a)(9). Essentially the only difference between aggravated sexual assault as part of a common scheme and

did not exist when the acts alleged in Count Two occurred. As a result of this new concern, the sentencing court did not impose a sentence at the hearing. Instead, the sentencing court asked for additional briefing from the parties to determine whether defendant's convictions violated the Ex Post Facto Clause of the U.S. Constitution.

¶ 4. Defendant subsequently filed a motion for Arrest of Judgment under Vermont Rule of Criminal Procedure 34, which the State opposed.

¶ 5. On February 3, 2014, the sentencing court issued a written order vacating defendant's convictions. Instead of relying on the Ex Post Facto Clause, the court vacated the convictions because the charging information was legally insufficient. Procedurally, the court noted that defendant's Motion for Arrest of Judgment was foreclosed as untimely, but found that, under Vermont Rule of Criminal Procedure 12(b)(2), defendant could challenge the legal insufficiency of the information at any time.

¶ 6. Further, according to the sentencing court, Count One of the information was insufficient to charge defendant with aggravated sexual assault under either prior version of the statute. Specifically, the court determined that the two previous iterations, which spanned the period when the information alleged that the acts occurred, had distinct elements not alleged in Count One. The earliest version, § 3253, governed up to June 1990, and required "serious bodily injury" for a conviction. Because the information did not allege this necessary element for Count One, the court concluded that the charge was insufficient to support a conviction under the statute's first iteration. The court then noted that the second iteration, § 3253(a)(8), which controlled from 1990 to 2006, prohibited aggravated sexual assault of a victim under ten. Because the information

---

aggravated sexual assault of a child as part of a common scheme is that the later has a mandatory minimum of twenty-five years. See 13 V.S.A. § 3253a(b).

alleged that the victim was under thirteen, the court found that Count One could not support a conviction under § 3253(a)(8) either. Thus, the court vacated the conviction under Count One. Similarly, the court vacated the conviction under Count Two because the statute—§ 3253a(a)(8)— did not exist during the time period specified in Count Two, 1997 to 2000.

¶ 7. After vacating the convictions, the sentencing court went on to examine whether "the facts alleged in Counts [One] and [Two] fairly and sufficiently charged violations of other criminal statutes in effect at the time." Although the sentencing court's language is unclear, the court appeared to base its authority for this examination on Vermont Rule of Criminal Procedure 7, first redacting and altering the language of both Count One and Two and then concluding that the amended versions of the counts sufficiently notified defendant that he could be convicted under the statutes in effect when the majority of the alleged conduct occurred: aggravated sexual assault of a victim under ten years old, § 3253(a)(8), and aggravated sexual assault as part of a common scheme, § 3253(a)(9).

¶ 8. For Count One, the sentencing court changed the date the alleged conduct began to July 1, 1990, to avoid the first version of the aggravated sexual assault statute, which required "serious bodily injury." The court also changed the complainant's age from thirteen to ten. The altered version of Count One alleged that defendant:

> sometime during the period of October of 1989 [July 1, 1990] up through and including October 11, 1997 engaged in the crime of aggravated sexual assault . . . with a child under the age of 13 [10] at a time when the defendant was 18 years of age or older, in violation of 13 V.S.A. § 3253(a)(8).

According to the court, the altered Count One covered the majority of defendant's acts and conformed to the contemporaneous version of § 3253(a)(8), aggravated sexual assault of a victim under ten.

5

¶ 9.     For Count Two, because § 3253a(a)(8) did not exist during the time specified in the information, the sentencing court changed the statutory citation in the information from § 3253a(a)(8) to § 3253(a)(9).  To conform with § 3253(a)(9), the court also excised the "irrelevant ages of the victim and actor."  The new information for Count Two alleged that defendant:

> sometime during the period of October 12, 1997 up through and including October 11, 2000, engaged in the crime of aggravated sexual assault of a child at a time when the defendant was at least 18 years of age and the victim was under the age of 16 . . . as part of the defendant's common scheme and plan, in violation of 13 V.S.A. § 3253a(a)(8)[(a)(9)].

¶ 10.     With this altered information in hand, the sentencing court concluded that the amended charges in Count One and Count Two provided defendant with sufficient notice of all the essential elements in § 3253(a)(8) and § 3253(a)(9), as required by Criminal Procedure Rule 7(b).  Specifically, the court determined that the altered age ranges in both counts were excess elements that did not substantially mislead or unfairly frustrate the defense.  According to the court, the case was not a dispute over age, dates, and assault details; rather, defendant's case rested on disproving the credibility of the complainant's testimony.  Moreover, the court opined that the redacted information benefited defendant because the altered counts constricted the State's original charge and did not undermine the defense.  As a result, the court entered judgment on the guilty verdicts for the altered versions of Count One and Count Two, "as limited to the elements and statutes in effect at the time of the misconduct charged."

¶ 11.     The sentencing court concluded its written decision by sentencing defendant.  The court noted that, unlike the statutes originally charged, the versions of § 3253(a)(8) and § 3253(a)(9) imposed sua sponte by the court each carried a maximum sentence of life in prison

with no mandatory minimum.[5]  The court sentenced defendant consistent with these sentencing ranges to a minimum sentence of twenty-five years and a maximum of life to serve on each altered count, to run concurrently with each other.

¶ 12.  On appeal, defendant claims the court erred in three respects: first, defendant argues the court usurped the jury's duty by impermissibly entering a judgment of guilty on the altered information; second, defendant contends the court did not possess the authority to amend the charges sua sponte and post-verdict; third, defendant asserts the jury's verdict was not consistent with the newly identified charges and applicable penalties.

¶ 13.  Although defendant failed to object at trial that the information was legally insufficient to support a conviction, under Criminal Procedure Rule 12(b)(2) a motion alleging a defect in the information may be made at any time.  See State v. Stell, 2007 VT 106, ¶ 10, 182 Vt. 368, 937 A.2d 649.  This is particularly true where, as in this case, our review of the information implicates two constitutional provisions directly related to whether a defect exists in the information: the Ex Post Facto Clause and the Sixth Amendment.

¶ 14.  Under the Ex Post Facto Clause, states may not retrospectively apply laws to a criminal defendant's prior actions, if that retroactive application disadvantages the affected offender.  Lynce v. Mathis, 519 U.S. 433, 441 (1997); see U.S. Const. art. I, § 10, cl. 1 ("No State shall . . . pass any . . . ex post facto Law.").  The Ex Post Facto Clause protects criminal defendants by assuring that "legislative Acts give fair warning of their effect and permit individuals to rely on

---

[5] The 1977 version of aggravated sexual assault imposed a sentence of not more than 25 years, 1977, No. 51, § 1; the sentence under the version enacted in 1990 was a maximum sentence of life imprisonment, 1989, No. 293 (Adj. Sess.), § 6; and the sentence under the current version of the statute is "not less than ten years and a maximum term of life." 13 V.S.A. § 3253(b).  The sentence for committing aggravated sexual assault of a child is imprisonment for "not less than 25 years with a maximum term of life." Id. § 3253a(b).

7

their meaning until explicitly changed." Weaver v. Graham, 450 U.S. 24, 28-29 (1981). Similarly, the Sixth Amendment, incorporated by the Due Process Clause of the Fourteenth Amendment, confers upon an accused criminal the right to be informed of the cause and nature of the accusation against him or her. State v. Christman, 135 Vt. 59, 60, 370 A.2d 624, 625 (1977); see U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation."); Vt. Const. ch. I, art. 10 ("That in all prosecutions for criminal offenses, a person hath a right . . . to demand the cause and nature of the accusation.").

¶ 15.    Whether defendant's convictions sufficiently complied with these constitutional requirements is a question of law that we review de novo. State v. Thayer, 2010 VT 78, ¶ 19, 188 Vt. 482, 14 A.3d 231. Specifically, as indicated above, resolution of this appeal requires us to determine if defendant's convictions violated the Ex Post Facto Clause; and, if so, whether the sentencing court could, post-verdict and sua sponte, amend the information to cure the ex post facto violation or, alternatively, whether the original information provided sufficient notice to sustain defendant's conviction under the statutes in effect when the alleged conduct occurred. We address each count separately, with these questions in mind.

I. Count One: Aggravated Sexual Assault Under § 3253(a)(8)

¶ 16.    It is plain that defendant's convictions under the current version of the aggravated sexual assault statute violated the Ex Post Facto Clause by retrospectively applying a statute that increased the punishment defendant faced. Thus, we agree with the sentencing court that defendant's convictions under the current aggravated sexual assault statutes should be vacated, albeit on a different legal basis.[6] We further conclude that the information could not be altered sua

_____

[6] As described above, the sentencing court asked the parties to brief the ex post facto issue raised by defendant's convictions, but ultimately vacated defendant's conviction on the basis that

8

sponte by the sentencing court after conviction and that the information as written did not provide defendant with sufficient notice pursuant to Criminal Procedure Rule 7 to sustain defendant's convictions under the statutes in effect when the acts occurred.

## A. Ex Post Facto Clause

¶ 17. As stated above, the general focus of the Ex Post Facto Clause is to protect criminal defendants from "laws that retroactively alter the definition of crimes or increase the punishment for criminal acts." Cal. Dep't of Corr. v. Morales, 514 U.S. 499, 504 (1995) (quotation omitted). To run afoul of the clause, the U.S. Supreme Court has long made clear that a law must fit within the four categories described in Calder v. Bull, 3 U.S. 386, 390 (1798).[7] See Carmell v. Texas,

---

the information was not sufficient to sustain a conviction under the statutes in effect when the alleged acts occurred. This basis for vacating defendant's convictions is circular and suspect. The plain language of Criminal Procedure Rule 7(d) precludes amendments post-verdict. See V.R.Cr.P. 7(d) ("[T]he court may permit an . . . information to be amended at any time . . . before verdict."); infra, ¶¶ 21-38. Without any authority for amending the information after the jury's verdict, defendant's convictions can stand only if the original information was sufficient to sustain the convictions under the statutes in effect when the alleged acts occurred—the basis the sentencing court had already held invalid.

[7] In Calder, Justice Chase described the four categories as follows:

> I will state what laws I consider ex post facto laws, within the words and the intent of the prohibition. 1st. Every law that makes an action, done before the passing of the law, and which was innocent when done, criminal; and punishes such action. 2nd. Every law that aggravates a crime, or makes it greater than it was, when committed. 3rd. Every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed. 4th. Every law that alters the legal rules of evidence, and receives less, or different, testimony, than the law required at the time of the commission of the offence, in order to convict the offender.

3 U.S. at 390.

529 U.S. 513, 539 (2000) (noting prior precedent holding "it was a mistake to stray beyond Calder's four categories").

¶ 18. Calder's third category prohibits retroactive application of "[e]very law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed." Calder, 3 U.S. at 390. A law retroactively increases punishment if, objectively analyzed, the legislative change "created a sufficient risk of increasing the measure of punishment attached to the covered crimes." Garner v. Jones, 529 U.S. 244, 250 (2000) (quotation omitted). No exact formula exists for determining whether a change in the law affects punishment sufficiently enough to violate the Ex Post Facto Clause; however, a "speculative and attenuated possibility" of increasing the punishment does not trigger an ex post facto violation. Morales, 514 U.S. at 509.

¶ 19. Here, the Legislature amended the aggravated sexual assault statute twice, in 1990 and 2006, increasing the penalty each time. Prior to the 1990 amendment, the maximum sentence a defendant faced for aggravated sexual assault was twenty-five years in prison. 1977, No. 51, §1. The 1990 amendment did not impose a mandatory minimum, but it increased the maximum sentence to life in prison. 1989, No. 293 (Adj. Sess.), § 6. Then, the 2006 amendment imposed a mandatory minimum of "not less than ten years" and retained the maximum sentence of life in prison. 2005, No. 192 (Adj. Sess.), § 10; see also 13 V.S.A. § 3253(b) (describing sentencing range for violators of § 3253(a)).

¶ 20. Thus, under the statutes in effect at the time, defendant would have faced a maximum of twenty-five years for the alleged conduct that occurred prior to 1989 and, for the conduct that occurred between 1990 and 1997, life in prison with no mandatory minimum. Instead, under the current version of the aggravated sexual assault statute, defendant faced a mandatory

10

minimum of ten years in prison and a maximum of life imprisonment. See 13 V.S.A. § 3253(b). This retrospectively applied sentencing range—a ten year mandatory minimum with a maximum of life in prison—created a sufficient risk that defendant would receive a higher sentence and, as a result, constituted an ex post facto violation under Calder's third category. See Peugh v. United States, __ U.S. __, 133 S. Ct. 2072, 2084 (2013) ("A retrospective increase in the [sentencing] range applicable to a defendant creates a sufficient risk of a higher sentence to constitute an ex post facto violation."); see also Lindsey v. Washington, 301 U.S. 397, 400-01 (1937) (holding that statute that makes "mandatory what was before only the maximum sentence" violates rule against ex post facto laws).

### B. Vermont Rule of Criminal Procedure 7(d): Amending the Information

¶ 21.  This does not end our inquiry, however. We must determine whether the sentencing court could sua sponte amend the information after conviction to list the statutes in effect when the alleged acts occurred.[8]

¶ 22.  We conclude that Rule 7(d) does not allow a trial court to sua sponte amend the information post-verdict. Under Rule 7(d), "[i]f no additional or different offense is charged and if substantial rights of the defendant are not prejudiced, the court may permit an indictment or information to be amended at any time after trial has commenced and before verdict." V.R.Cr.P. 7(d). We have upheld "merely technical" amendments under this rule, as long as the amendment

---

[8] Our review is somewhat complicated by the sparse authority cited by the sentencing court for its sua sponte action. The sentencing court altered and redacted Count One's language, suggesting that it relied on Criminal Procedure Rule 7(d), which allows for amendments to the information under certain circumstances prior to verdict. On the other hand, the court did not specifically cite to Rule 7(d); instead, the court indicated that the information was sufficient under Rule 7(b) to meet defendant's due process rights. As a result, we examine the court's authority under both subsections.

does not prejudice the defendant or impair his defense. State v. Burclaff, 138 Vt. 461, 465-66, 418 A.2d 38, 41 (1980).

¶ 23.    In this case, although the sentencing court did not cite to Rule 7(d), the court altered the following portions of Count One's charge:

> sometime during the period of ~~October of 1989~~ [July 1, 1990] up through and including October 11, 1997 engaged in the crime of aggravated sexual assault[, consisting of contact between the defendant's penis and the victim's mouth, or any intrusion however slight by the defendant's hand into the victim's vagina,] with a child under the age of ~~13~~ [10] at a time when the defendant was 18 years of age or older, in violation of 13 V.S.A. § 3253(a)(8).

By altering the information in this manner, the sentencing court sought to conform the charge with the post-1990 version of aggravated sexual assault. See 1989, No. 293 (Adj. Sess.), § 6.

¶ 24.    But the plain language of Rule 7(d) indicates that it cannot be invoked post-verdict.[9] See V.R.Cr.P. 7(d) ("[T]he court may permit an . . . information to be amended at any time . . . before verdict." (emphasis added)); State v. O'Neill, 165 Vt. 270, 275, 682 A.2d 943, 946 (1996) ("We presume the Legislature intended the plain, ordinary meaning of the language.").

---

[9]    With respect to the timing of the amendment, the majority of our sister jurisdictions do not allow an amendment to the charging information post-verdict. See, e.g., Me.R.Cr.P. 7(e) ("The court may permit the amendment of . . . an information at any time before verdict or finding if no additional or different crime is charged and if no substantial right of the defendant is prejudiced." (emphasis added)); R.I.R.Cr.P. 7(e) ("The court may permit an information or a complaint to be amended at any time before verdict or finding if no additional or different offense is charged and if substantial rights of the defendant are not prejudiced." (emphasis added)).  The likely prejudice to the defendant, moreover, increases as the trial moves towards verdict. See, e.g., State v. Guerra, 562 N.W.2d 10, 12-13 (Minn. 1997) ("Prior to trial the presiding court is 'relatively free' to allow an amendment charging an additional offense in a criminal complaint.  But after the trial has begun and jeopardy has attached, an amendment is appropriate only if it does not charge an additional or different offense and only if it does not prejudice substantial rights of the defendant." (citation omitted)); State v. Pelkey, 745 P.2d 854, 857 (Wash. 1987) (en banc) ("A criminal charge may not be amended after the State has rested its case-in-chief unless the amendment is to a lesser degree of the same charge or a lesser included offense.").

¶ 25.  Moreover, it is plain that the trial court's alterations substantially prejudiced defendant under our precedent governing amendments to an information.  In State v. Woodmansee, the original version of Count Three's information charged the defendant with burglary—specifically entering a building with the intent to commit larceny—and the information for Count Four charged the defendant with attempted arson of the same building.  124 Vt. 387, 389-90, 205 A.2d 407, 409 (1964).  Then, on the fifth day of a six-day trial, the trial court permitted the State to amend Count Three's information to indicate that the burglary charge in Count Three was based on the defendant entering the building with the intent to commit arson, not larceny.  Id. at 388-90, 205 A.2d at 408-09.  We set aside the defendant's subsequent conviction under Count Three and ordered a new trial.  Id. at 392, 205 A.2d at 410-11.  In doing so, we noted that the defendant could "hardly have failed reasonably to have apprehended the nature of the offenses with which he was charged"; however, given the constitutional policy underscoring a defendant's right to be notified of the charges and the timing of the amendment (five days into a six-day trial), we held that the prosecuting authority should be strictly accountable for substantive shortcomings in its pleadings.  Id. at 390, 205 A.2d at 410.  Moreover, we concluded that if we used the defendant's subjective understanding of the defective charges as the bellwether for determining whether an amendment to the charges violated the defendant's constitutional rights, it would allow courts to exercise "[a]uthoritarian caprice" instead of ensuring justice and fair dealing.  Id.

¶ 26.  Here, the timing of the court's alteration occurred post-verdict, far after the time found questionable in Woodmansee.  Like Woodmansee, moreover, the sentencing court's alterations changed substantive factual elements to eliminate the applicability of the pre-1990 statute and to conform with the post-1990 version of the aggravated sexual assault statute.  First, modifying the dates and the age of the victim ensured the State would not have to prove "serious

13

bodily injury," as required by the pre-1990 version of aggravated sexual assault. See 1977, No. 51, § 1. Second, as described above, changing the age of the victim to under ten increased defendant's sentencing exposure from a maximum twenty-five year imprisonment to a maximum of life imprisonment. 1989, No. 293 (Adj. Sess.), § 6. Thus, because the trial court's modifications occurred post-verdict and altered the information to expose defendant to a greater penalty, the changes substantially prejudiced defendant and were not permitted under Rule 7(d). Compare State v. Verge, 152 Vt. 93, 96, 564 A.2d 1353, 1355 (1989) (concluding that amendment effectively raising potential maximum punishment from six months imprisonment to one year imprisonment violated Rule 7(d)), with State v. Burclaff, 138 Vt. 461, 465-66, 418 A.2d 38, 41 (1980) (finding court had authority under Rule 7(d) to permit State to amend charging information at close of State's case because amendment was merely technical and did not prejudice defendant).

¶ 27. More fundamentally, the sua sponte nature of the alteration implicated separation of powers and usurped the jury's role in determining defendant's guilt. As delegates of the executive, the power to charge rests with the prosecuting authority, State v. Wesco, Inc., 2006 VT 93, ¶ 11, 180 Vt. 345, 911 A.2d 281, and courts must hold that authority strictly accountable for substantive shortcomings in the information. Woodmansee, 124 Vt. at 390, 205 A.2d at 410. Likewise, the jury must determine that the defendant is guilty beyond a reasonable doubt of every element of the crime for which he is charged. Sullivan v. Louisiana, 508 U.S. 275, 277-78 (1993). Here, the sentencing court, confronted with defendant's improper conviction, chose from one of two aggravated sexual assault statutes that could apply to defendant's conduct, summarily altered Count One in lieu of the prosecution, determined the elements of the new charge were met beyond a reasonable doubt, and then sentenced defendant—all in a single written opinion issued post-verdict. This verges on the authoritarian caprice we warned against in Woodmansee and cannot

14

stand. 124 Vt. at 390, 205 A.2d at 410. As a result, we conclude that Rule 7(d) does not allow a court to amend the information sua sponte and post-verdict.

C.     Vermont Rule of Criminal Procedure 7(b): Sufficiency of the Information

¶ 28.   Having determined that the sentencing court had no authority to amend the information post-verdict, we are left with one remaining question: whether Count One, as originally charged and without alterations, provided sufficient notice to sustain defendant's conviction under either the pre-1990 or post-1990 version of aggravated sexual assault.

¶ 29.   Rule 7(b) requires the information to "be a plain, concise, and definite written statement of the essential facts constituting the offense charged." Rule 7(b) is based on the constitutional requirement that a defendant must be "informed of the cause and nature of the accusation against him" and ensures that the information provides a defendant with sufficient notice to enable an intelligent defense and to protect the defendant from subsequent prosecution for the same offense. Christman, 135 Vt. at 60, 370 A.2d at 625-26. At the most basic level, the information must contain the elements of the offense in order to satisfy the constitutional demands. See State v. Kreth, 150 Vt. 406, 407-08, 553 A.2d 554, 555 (1988). This is not a subjective inquiry of what the defendant "actually understood, but a scrutiny of the charge, as made, to determine what offense is reasonably indicated by its language." Christman, 135 Vt. at 61, 370 A.2d at 625. "A reasonable understanding of the charge is not based solely on the precise wording of the information but draws upon the additional facts found in the accompanying affidavit." State v. Neisner, 2010 VT 112, ¶ 27, 189 Vt. 160, 16 A.3d 597.

¶ 30.   Defendant's charged conduct under Count One spanned a period when two different aggravated sexual assault statutes controlled. On its face, therefore, Count One as charged created an ambiguity because defendant could not reasonably know which aggravated

15

sexual assault statute applied to the conduct. Moreover, under either version of the statute, the information lacked an essential element necessary to sustain defendant's conviction.

¶ 31. Count One alleged that defendant:

> sometime during time period of October of 1989 up through and including October 11, 1997 engaged in the crime of aggravated sexual assault with a child under the age of 13 at a time when the defendant was 18 years of age or older, in violation of 13 V.S.A. § 3253(a)(8).

Apart from the dates, this information closely tracked the statutory language of the aggravated sexual assault statute as amended in 2006. See 13 V.S.A. § 3253(a)(8) ("A person commits the crime of aggravated sexual assault if the person commits sexual assault [and] . . . [t]he victim is under the age of 13 and the actor is at least 18 years of age."); 2005, No. 192 (Adj. Sess.), § 10. The accompanying affidavit contained the facts underlying the charge, including the complainant's interview with the state police, which lists multiple sexual acts perpetrated by defendant on the complainant, beginning in 1988—when the complainant was four—and continuing to her birthday in October 2000—when she turned seventeen. During the time period specified in Count One, the complainant described several sexual acts that occurred when she was under ten years old and numerous sexual acts that happened between the ages of ten and thirteen.

¶ 32. Despite these specific descriptions, however, Count One did not state that the complainant sustained a "serious bodily injury," as required by the aggravated sexual assault statute in effect prior to 1990. See 1977, No. 51, §1. To be a "serious bodily injury" under the pre-1990 statute, the injury must have "create[d] a substantial risk of death or . . . cause[d] serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." Id. And, even if Count One contained this element, no factual allegation indicates that the complainant suffered such an injury during the acts that occurred prior to 1990. Because Count

16

One does not contain this essential element, the information was not sufficient to support defendant's conviction under the pre-1990 version of the aggravated sexual assault statute. <u>Kreth</u>, 150 Vt. at 408, 553 A.2d at 555 ("An information that omits an essential element of the crime charged is defective and cannot serve as the basis of a conviction."); see also 1 C. Wright et al., Fed. Prac. & Proc. Crim. § 125 (4th ed. 2016) ("Every essential element of the offense must be alleged in the pleading.").

¶ 33.    Similarly, Count One omits a necessary element for the aggravated sexual assault statute in effect from 1990 to 2006. That statute required the victim to be under ten years old. See 1989, No. 293 (Adj. Sess.), § 6 (amending statute to define aggravated sexual assault as sexual assault when "victim is under the age of 10 and the actor is at least 18 years of age"). By contrast, Count One charged defendant with committing the sexual assault when the complainant was under thirteen, during the period from 1989 to 1997.

¶ 34.    Generally speaking, "great generality in the date allegation is acceptable." 1 Wright, <u>supra</u>, § 125. And this Court has specifically found that "time is not an essential element to be charged in the information" for sex-related crimes. <u>State v. Ross</u>, 152 Vt. 462, 465, 568 A.2d 335, 337 (1989). In this case, however, it is not the time that the acts occurred that is essential to the statute, but the age of the victim. The victim's age determines whether the applicable subsection of the aggravated sexual assault statute applies, rather than the basic sexual assault statute. See 1989, No. 293 (Adj. Sess.), § 6. Indeed, the victim's age controls whether a defendant faces a maximum sentence of thirty-five years in prison or a maximum of life imprisonment. <u>Id</u>. In this statutory scheme, defendants who sexually abuse children are more culpable and, for this greater culpability, defendants face an increased penalty. See <u>State v. Walton</u>, 958 S.W.2d 724,

729 (Tenn. 1997) (noting victim's age was essential element of aggravated sexual offense against children because age determined culpability and penalty).

¶ 35. Moreover, that essential element could not be ascertained from the original information, nor could defendant reasonably know which factual allegations in the affidavit exposed him to punishment under the aggravated sexual assault statute, without the essential element of the victim's age. See Apprendi v. New Jersey, 530 U.S. 466, 478 (2000) (noting that, historically, "[t]he defendant's ability to predict with certainty the judgment from the face of the [information] flowed from the invariable linkage of punishment with crime."); see also State v. Bradley, 145 Vt. 492, 495, 494 A.2d 129, 132 (1985) ("[A]n essential fact, affecting the degree of punishment, must be alleged in the information."). Although the accompanying affidavit described conduct that occurred when the victim was under ten, it did not put defendant on notice that Count One was based on that specific conduct. See State v. Aiken, 2004 VT 96, ¶ 11, 177 Vt. 566, 862 A.2d 285 (mem.) (reversing conviction because "the fact that the accompanying affidavit described separate conduct for which defendant could have been charged . . . did not put defendant on notice that the . . . charge was based on that conduct"). As a result, the information lacked an essential element necessary to notify defendant of the charge and was not sufficient to sustain his conviction under the post-1990 version of aggravated sexual assault. Kreth, 150 Vt. at 408, 553 A.2d at 555.

¶ 36. It is true, as the sentencing court noted, that Count One and the accompanying affidavit include factual allegations that could support a charge under the post-1990 version of the aggravated sexual assault statute. That does not mean, however, that defendant had notice of the essential elements of the charge or that the jury actually found the essential facts beyond a reasonable doubt. A properly pled charge forms the basis for the State's burden of proof and the

18

jury instructions; in turn, correct jury instructions ensure that the jury determines each essential element beyond a reasonable doubt. See In re Winship, 397 U.S. 358, 364 (1970) (concluding that due process "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged"). Under the statute in effect when the alleged acts occurred, defendant's guilt and related sentencing exposure depended on the State establishing that the complainant was under ten and the jury finding, beyond a reasonable doubt, that the complainant was under ten when the sexual assaults occurred. But at trial, as directed by the original charge and jury instructions,[10] the jury determined the conduct occurred when the complainant was under thirteen. Given the three-year difference in the victim's age between the initial charge and the altered charge, the sentencing court could not presume that the jury found, beyond a reasonable doubt, that the conduct occurred when the complainant was under ten. Rather, by concluding that the information provided defendant with sufficient notice of the charge to sustain his conviction, the court effectively determined an essential fact in lieu of the jury, an essential fact. Cf. Sullivan, 508 U.S. at 277-78. We thus conclude that defendant did not have sufficient notice of the charge under Rule 7(b) because the information does not include an essential element of the charge.

### D. Lesser-Included Offense

¶ 37. On appeal, the State argues that the statutory rape subsection of the sexual assault statute, 13 V.S.A. § 3252(a)(3), is a lesser-included offense of aggravated sexual assault of a victim under ten. The version of § 3252(a)(3) in effect when the acts occurred prohibited sexual acts with another person under the age of sixteen, "except where the persons are married to each other and

---

[10] The trial court instructed the jury that, "The fifth essential element is that at the time of the sexual assault, [the complainant] was under the age of 13."

the sexual act is consensual." Because the jury found at trial that the sexual conduct occurred when the complainant was under thirteen, the State claims that the sentencing court could infer that the jury also found each element of § 3252(a)(3) beyond a reasonable doubt. As a result, the State asks us to remand Count One for the sentencing court to enter judgment on the lesser-included offense.

¶ 38. We need not address whether § 3252(a)(3) is, in fact, a lesser-included offense of aggravated sexual assault of a victim under ten because we conclude that no "inherent authority" exists for a trial court to infer from a jury's verdict that the jury also found the elements of a lesser-included offense, when that lesser-included charge was not submitted to the jury.

¶ 39. Under 13 V.S.A. § 14(a), a trial court "on its own motion, may raise the issue of a lesser included offense at a jury charge conference." In addition, upon request of either party, the "jury shall be informed of the lesser included offense if supported by the evidence." Id. Although this language seemingly allows a court to raise the issue of a lesser-included offense sua sponte, it plainly contemplates that the jury will actually be instructed on the charge. This aligns with the due process concerns supporting the lesser-included offense doctrine. As stated in Keeble v. United States, in the general case, "if the prosecution has not established beyond a reasonable doubt every element of the offense charged, and if no lesser offense instruction is offered, the jury must . . . return a verdict of acquittal." 412 U.S. 205, 212 (1973). An instruction benefits a defendant because it provides the jury with a less severe alternative that lessens the risk of an unwarranted conviction. Beck v. Alabama, 447 U.S. 625, 634, 637 (1980). If after being acquitted, a trial judge could then determine, sua sponte and post-verdict, that the jury's finding supported a conviction of an uncharged, lesser-included offense, it would completely usurp the jury's role and undermine a defendant's due process rights.

¶ 40. The State argues that the common law and our precedent provides the court with the authority to infer that the jury found the elements of an uncharged, lesser-included offense beyond a reasonable doubt. Contrary to the State's first claim, "[a]t common law, the jury was permitted to find the defendant guilty of any lesser offense necessarily included in the offense charged," not the trial court judge. Beck, 447 U.S. at 633. Moreover, the cases cited by the State do not support the State's proposition. For example, in State v. Gosselin, we found that Count One of the complaint was defective because it lacked a material element; the defendant was charged with leaving the scene of an accident, but the information did not allege that the accident resulted in an injury to any person or property other than the defendant's vehicle. 110 Vt. 361, 365, 6 A.2d 14, 16 (1939). We held that the information charged no offense under Vermont law and that, further, the defect could not be cured by the verdict because it could not "be implied or inferred from the finding that injury as defined by the statute resulted from the accident." Id. From this language, the State maintains that a trial court may cure a defect in the pleading "if and only if such a fact must necessarily be implied or inferred from the jury finding." But Gosselin's facts and legal analysis are distinct from this case. First, in Gosselin, we did not consider whether a court could enter a conviction on a lesser-included offense not given to the jury, our analysis involved the information's sufficiency. Second, nothing regarding a lesser-included offense could be inferred from the jury finding in this case because the jury was not actually instructed on the lesser-included offense. Cf. 13 V.S.A. § 14(a). For the reasons stated, we decline to remand Count One for the sentencing court to enter judgment on the lesser-included offense.

II. Count Two: Aggravated Sexual Assault of a Child Under § 3253a(a)(8)

¶ 41. Like Count One, defendant's conviction for aggravated sexual assault of a child as part of a common scheme violated the Ex Post Facto Clause of the U.S. Constitution. Similarly,

21

the information could not be altered sua sponte by the sentencing court after defendant's conviction and the information as written did not provide defendant with the notice required under Rule 7.

### A. Ex Post Facto Clause

¶ 42. As described above, the Ex Post Facto Clause prohibits "laws that retroactively alter the definition of crimes or increase the punishment for criminal acts." Morales, 514 U.S. at 504 (quotation omitted). Defendant's conviction violated this proscription in two respects: first, the law specifically prohibiting aggravated sexual assault of a child did not exist at the time the alleged acts occurred; second, an analogous law in effect when the alleged acts occurred— aggravated sexual assault as part of a common scheme, 13 V.S.A. § 3253(a)(9)—imposed a lesser mandatory minimum than the statute defendant was convicted of violating.

¶ 43. At the most basic level, the Ex Post Facto Clause prohibits a conviction that relies on a law enacted after the alleged conduct occurred, if it criminalizes new conduct or imposes a greater punishment. Collins v. Youngblood, 497 U.S. 37, 44 (1990) ("[A] law is ex post facto when after an action (indifferent in itself) is committed, the legislator then for the first time declares it to have been a crime, and inflicts a punishment upon the person who has committed it." (quotation omitted)); see also Calder, 3 U.S. at 390 (listing as first category of law prohibited as ex post facto, "[e]very law that makes an action, done before the passing of the law, and which was innocent when done, criminal; and punishes such action").

¶ 44. Here, even if defendant's conduct was already criminal under § 3253(a)(9), allowing defendant's conviction under § 3253a(a)(8) would violate Calder's second category, which prohibits "[e]very law that aggravates a crime, or makes it greater than it was, when committed." Calder, 3 U.S. at 390. Section 3253a(a)(8) was not added by the Legislature until 2009, nine years after the acts described in Count Two concluded. 2009, No. 1, § 30. As noted,

22

the text of § 3253a(a)(8) essentially mirrors the 1990 version of § 3253(a)(9), but specifically prohibits aggravated sexual assault of a child as part of a common scheme. Compare 13 V.S.A. § 3253a(a)(8) ("A person commits the crime of aggravated sexual assault of a child if the actor is at least 18 years of age and commits sexual assault against a child under the age of 16 in violation of section 3252 of this title [basic sexual assault] and . . . the victim is subjected to repeated nonconsensual sexual acts as part of the actor's common scheme and plan."), with 1989, No. 293 (Adj. Sess.), § 6 ("A person commits the crime of aggravated sexual assault if the person commits sexual assault . . . [and] . . . [t]he victim is subjected by the actor to repeated nonconsensual sexual acts as part of the actor's common scheme and plan."). The fundamental difference between the two statutes rests in their prescribed mandatory minimums: a violation of § 3253a(a)(8) carries a mandatory minimum of twenty-five years, while the 1990 version of § 3253(a)(9) did not impose a mandatory minimum. See 1989, No. 293 (Adj. Sess.), § 6. Thus, defendant's conviction under § 3253a(a)(8) exposed him to a mandatory minimum of twenty-five years and, if he were properly charged and convicted under the 1990 version of § 3253(a)(9), he would have faced no mandatory minimum. This created a sufficient risk that defendant would receive a higher sentence and, as a result, constituted an ex post facto violation. See Peugh, __ U.S. at __, 133 S. Ct. at 2084 ("A retrospective increase in the [sentencing] range applicable to a defendant creates a sufficient risk of a higher sentence to constitute an ex post facto violation.").

B. Vermont Rule of Criminal Procedure 7(d): Amending the Information

¶ 45. As with Count One, we reiterate our holding that the plain language of Criminal Rule 7(d) does not allow a court to, sua sponte and post-verdict, amend the charging information. See supra, ¶¶ 21-28.

23

C. Vermont Rule of Criminal Procedure 7(b): Sufficiency of the Information

¶ 46. We are left to determine whether Count Two's original, unaltered language sufficiently informed defendant that he could be found guilty of violating 13 V.S.A. § 3253(a)(9) (1990). As indicated above, to be sufficient, the information must contain all of the offense's elements, based on common sense and reason. Neisner, 2010 VT 112, ¶ 27. To make this determination, we must objectively scrutinize the charge and affidavit to ascertain "what offense is reasonably indicated by its language." Christman, 135 Vt. at 61, 370 A.2d at 625. In particular, although the information must specify the statutory citation the defendant is alleged to have violated, failure to name the correct citation will not result in dismissal of the information unless it "misle[d] the defendant to his prejudice." V.R.Cr.P. 7(b).

¶ 47. The information alleged in Count Two that defendant,

> sometime during the period of October 12, 1997 up through and including October 11, 2000, engaged in the crime of aggravated sexual assault of a child at a time when the defendant was at least 18 years of age and the victim was under the age of 16 by subjecting the victim to repeated non-consensual sexual acts, consisting of contact between the defendant's penis and the victim's vulva, or contact between the defendant's penis and the victim's mouth, or any intrusion however slight by the defendant's hand into the victim's vagina, as part of the defendant's common scheme and plan, in violation of 13 V.S.A. § 3253a(a)(8).

¶ 48. In support of this information, the affidavit alleged that defendant subjected complainant to multiple sexual acts, beginning in 1988—when the complainant was four—and continuing to her birthday in October 2000—when she turned seventeen. For the time period specified in Count Two, complainant recounted a specific act of sexual intercourse that occurred when she was home sick from school as well as numerous acts of oral sex in defendant's truck and

in the family home. The complainant could not remember the exact dates of the alleged sexual acts, but the time frame she described was consistent with Count Two's time period.

¶ 49. Plainly, Count Two closely tracks the language of § 3253(a)(9)[11] but for two differences: first, the information lists the defendant and complainant's respective ages during the specified time period; second, the information describes the statute violated as "aggravated sexual assault of a child" and lists the corresponding citation, § 3253a(a)(8). The question becomes whether these distinctions would prevent a reasonable person from understanding that Count Two could support a conviction under § 3253(a)(9). Christman, 135 Vt. at 61, 370 A.2d at 625.

¶ 50. First, we conclude that the inclusion of the age range described in Count Two would not, on its own, prevent defendant from ascertaining the nature of the charge. Unlike the essential elements lacking from Count One, neither the age of the complainant nor defendant's age was the critical element that differentiated § 3253(a)(9) from the basic sexual assault statute in effect at the time. At the time of the alleged acts, age was not an element of aggravated sexual assault as part of a common scheme and any age reference in Count Two was merely surplus language not

---

[11] The version of § 3253(a)(9) enacted in 1990 prohibited aggravated sexual assault that subjected a victim "to repeated nonconsensual sexual acts as part of the actor's common scheme and plan." Whether a sexual act is repeated or a single continuous occurrence depended on a variety of factors, including the following:

> [T]he elapsed time between successive parts of the defendant's conduct; whether the defendant's conduct occurred in more than one geographic location; whether an intervening event occurred between successive parts of the defendant's conduct; whether there was sufficient time for reflection between assaultive acts for the defendant to again commit himself.

State v. Fuller, 168 Vt. 396, 400, 721 A.2d 475, 479 (1998). Based on these factors, the affidavit contains sufficient allegations of repeated acts during the time period specified in Count Two. Further, the affidavit sufficiently describes the sexual nature of the acts. See 13 V.S.A. § 3251(1) (defining sexual acts).

necessary to a charge under § 3253(a)(9). See United States v. Di Pietroantonio, 289 F.2d 122, 124 (2nd Cir. 1961) ("An appellant should not be able to reverse a conviction on a claim of variance merely because some surplus statutory language appears in the indictment unless he can show that he was misled by the use of the statutory term."); see also Ross, 152 Vt. at 465, 568 A.2d at 337 (noting that, for sex-related crimes, "time is not an essential element to be charged in the information"). This surplus language would not, on its own, deny defendant the right to be informed on the nature of the allegations.

¶ 51. This does not end the inquiry, however. Criminal Procedure Rule 7(b) indicates that failure to list the correct citation will not result in dismissal of the information unless it "misle[d] the defendant to his prejudice." V.R.Cr.P. 7(b). Although we have not had occasion to examine this rule, many federal courts have analyzed the analogous federal version.[12] See, e.g., United States v. Groce, 398 F.3d 679, 683 (4th Cir. 2005); United States v. Gordon, 641 F.2d 1281, 1284 (9th Cir. 1981). Generally, these courts have determined that, when the facts alleged in the information clearly charge a violation of the correct statute, an incorrect citation does not warrant dismissal of the charge, absent prejudice to the defendant. Kersten v. United States, 161 F.2d 337, 339 (10th Cir. 1947) (affirming conviction despite fact that neither caption nor body of information listed proper citation or name of act violated). Examination under Rule 7(b) is thus a two-part inquiry: whether the facts alleged clearly support the correct charge; and whether a defendant would be prejudiced by application of the correct charge. We conclude that, although the facts

---

[12] Federal Rule of Criminal Procedure 7(c)(2) states, "Unless the defendant was misled and thereby prejudiced, neither an error in a citation nor a citation's omission is a ground to dismiss the indictment or information or to reverse a conviction."

alleged in the affidavit support a charge under § 3253(a)(9), defendant's inability to ascertain the penalty prejudiced defendant under Rule 7(b) and violated his right to be notified of the charges.

¶ 52. Prejudice exists when defendants do not "know with certainty the offense with which they were charged and the possible penalty threatened." Smith v. District of Columbia, 387 F.2d 233, 237 (D.C. Cir. 1967) (emphasis added). Thus, the prejudice under Rule 7(b) inures, not from the comparative length of the sentences imposed by § 3253a(a)(8) and § 3253(a)(9),[13] but from defendant's inability to know with certainty the possible penalty he faced. Smith, 387 F.2d at 237; see also Apprendi, 530 U.S. at 479 (noting that, historically, defendants were able to predict judgment from charging information); Bradley, 145 Vt. at 495, 494 A.2d at 132 ("[A]n essential fact, affecting the degree of punishment, must be alleged in the information.").

¶ 53. In this case, everything in the information and its accompanying affidavit suggested that defendant was exposed to a mandatory minimum of twenty-five years and a maximum of life, a fact that likely informed all aspects of his defense, including whether to attempt to negotiate a plea deal or not.[14] Although it is true that, if convicted under § 3253(a)(9), defendant did not face

---

[13] A violation of § 3253a(a)(8) carries a mandatory minimum of twenty-five years, while the 1990 version of § 3253(a)(9) did not impose a mandatory minimum.

[14] The dissent argues that "the possible impact on plea negotiations is not part of the prejudice determination" because prejudice is measured by a defendant's ability to prepare an intelligent defense. Post, ¶ 67. Although the standard for analyzing the potential prejudice surrounding plea deals is not as developed in the notice context, cf. Smith, 387 F.2d at 237, the U.S. Supreme Court has made clear that a defendant may be prejudiced under the Sixth Amendment by a counsel's ineffective advice to accept or decline a plea deal. See Lafler v. Cooper, __ U.S. __, 132 S. Ct. 1376, 1388 (2012). The Supreme Court's position acknowledges "the reality that criminal justice today is for the most part a system of pleas, not a system of trials. Ninety-seven percent of federal convictions and ninety-four percent of state convictions are the result of guilty pleas." Id. In the notice context, moreover, a defendant is statistically more likely to accept a plea deal when offered a plea that does not carry a mandatory minimum sentence. See United States v. Kupa, 976 F. Supp. 2d 417, 449-51 (E.D.N.Y. 2013) (criticizing government's use of prior felony informations and mandatory minimums to coerce defendants to plead guilty to

the mandatory minimum imposed by § 3253a(a)(8), no reasonable defendant could ascertain this fact from the charge or adequately prepare a defense with this certainty in mind.[15]

¶ 54.    More fundamentally, the specific legal circumstances in this case compounded the prejudice; because defendant's underlying convictions violated the Ex Post Facto Clause, relying on the sufficiency of the information to find defendant guilty of the statutes in effect at the time of his alleged acts stretches the limits of Rule 7(b).[16]  In a strikingly similar case, Seaton v. State, the Kansas Court of Appeals concluded that such an attempt to remedy an ex post facto violation was "fruitless."  998 P.2d 131, 136 (Kan. Ct. App. 2000).  In Seaton, the trial court determined, post-verdict, that the jury's findings were sufficient to support a conviction under the indecent liberties statute in effect when the acts occurred, in lieu of a conviction that violated the Ex Post Facto Clause.  Id.  The appeals court held that, because the ex post facto conviction was void, it was an inappropriate "legal fiction[] . . . to presume that an unconstitutional conviction [could] be cured by simply announcing that a defendant [was] no longer guilty of violating the ex post facto law

lesser sentences without minimums); see also M. Galanter, The Vanishing Trial: An Examination of Trials and Related Matters in Federal and State Courts, 1 J. Empirical Legal Stud. 459, 492 (2004), http://epstein.wustl.edu/research/courses.judpol.Galanter.pdf [https://perma.cc/VT9H-YE2E].  Given these facts, we believe the prejudice inquiry extends to plea negotiations and is not limited only to acts that occur at trial, as the dissent appears to suggest.

[15] We are not persuaded by the State's argument that defendant actually benefited from the imposition of § 3253(a)(9) because that statute did not impose a mandatory minimum.  As explained above, the prejudice arose from defendant's inability to understand with certainty the penalty he faced and the implications that uncertainty had on his defense.  Smith, 387 F.2d at 237.

[16] We note that this is a key difference between the cases cited by the dissent and this case: none of the cases relied upon by the dissent involved an underlying conviction that violated the Ex Post Facto Clause.  See, e.g., United States v. Kennington, 650 F.2d 544, 546 (5th Cir. 1981) (per curiam); United States v. Walker, 557 F.2d 741, 746 (10th Cir. 1977); Enzor v. United States, 262 F.2d 172, 174 (5th Cir. 1958); Moore v. State, 264 So. 2d 414, 415 (Miss. 1972) (specifically noting that Ex Post Facto Clause was not implicated).

but rather the statutory provision in effect at the time of the alleged offense." Id. Similarly, we conclude that relying on the sufficiency of the information in these circumstances is not only inappropriate, but also prejudiced defendant.

¶ 55. Because defendant's convictions under statutes listed in the information violated the Ex Post Facto Clause, because the sentencing court had no authority to amend the information after trial, and because the information was insufficient to put defendant on notice of the charges in effect at the time of his actions, the convictions must be vacated.

Convictions are vacated.

FOR THE COURT:

_____

Associate Justice

¶ 56. **REIBER, C.J., dissenting.** Defendant's conviction for aggravated sexual assault based on repeated nonconsensual sexual acts should stand. Although the information cited the incorrect statute and contained superfluous information, it provided defendant with notice of all elements of the correct charge. Defendant can point to no way in which he was prejudiced in the preparation and presentation of his defense. He knew all elements of the charge, the jury determined those facts against him, and he was sentenced according to the correct statutory range. Therefore, I would affirm defendant's conviction and sentence for this charge and dissent from the majority's reversal.

¶ 57. I concur with the majority's analysis of the first charge. This dissent solely concerns the second charge listed in the information, which was described as a violation of 13

29

V.S.A. § 3253a(a)(8) for aggravated sexual assault of a child as part of a common scheme. More particularly, the information provided:

> sometime during the period of October 12, 1997 up through and including October 11, 2000, [defendant] engaged in the crime of aggravated sexual assault of a child at a time when the defendant was at least 18 years of age and the victim was under the age of 16 by subjecting the victim to repeated non-consensual sexual acts, consisting of contact between the defendant's penis and the victim's vulva, or contact between the defendant's penis and the victim's mouth, or any intrusion however slight by the defendant's hand into the victim's vagina, as part of the defendant's common scheme and plan, in violation of 13 V.S.A. § 3253a(a)(8).

The information listed the penalty for the charge as not less than twenty-five years to a maximum term of life and fine of not more than $50,000.

¶ 58. The statutory reference is incorrect. Section 3253a(a)(8) was not enacted until 2009, long after the acts alleged in the information occurred. See 2009, No. 1, § 30.[17] Because the incorrect statutory citation was used, the information also contains unnecessary facts regarding the age of the victim and the defendant and lists a mandatory minimum that was inapplicable to defendant. The question is whether these errors require reversal.

¶ 59. An information must provide a "plain, concise, and definite written statement of the essential facts constituting the offense charged." V.R.Cr.P. 7(b). It should also provide a citation to the provision of law allegedly violated, but error in the citation or omission of the citation is not "ground for dismissal of the indictment or information or for reversal of a conviction or any other post-conviction relief if the error or omission did not mislead the defendant to his

---

[17] I agree with the majority's assessment that retroactively applying § 3253a(a)(8) to defendant would violate the Ex Post Facto Clause of the Federal Constitution because application of the mandatory minimum sentence, which was enacted after defendant's crimes were committed, would expose defendant to a possibly enhanced penalty.

prejudice." Id. The purpose of having a clear and concise statement of the charge is to "ensure[] that a criminal defendant is provided with sufficient notice to enable the preparation of an effective defense." In re Carter, 2004 VT 21, ¶ 13, 176 Vt. 322, 848 A.2d 281. In determining whether an information is sufficient, the information is read in conjunction with the affidavit of probable cause. Id.

¶ 60. Therefore, the error here is not fatal if the information provided defendant with notice of all essential elements of the crime and "did not mislead the defendant to his prejudice." V.R.Cr.P. 7(b); see State v. Christman, 135 Vt. 59, 60, 370 A.2d 624, 625 (1977) (explaining that information is sufficient if it "set[s] forth charges with such particularity as will reasonably indicate the exact offense the accused is charged with, and will enable him to make intelligent preparation for his defense").

¶ 61. Despite the reference to the incorrect statute, the notice requirement was satisfied in this case.[18] It is immaterial that the statutory citation error appears to have been purposeful rather than inadvertent. The critical inquiry is whether the facts alleged provide all elements of the proper charge. See 1 C. Wright et al., Federal Practice & Procedure § 124 (4th ed. 2016) (explaining that it is facts alleged, rather than statutory citation, that control, "and so if an indictment or information properly alleges an offense it is sufficient, even though the attorney for the government . . . believed that the crime charged was covered by a different statute"). Although the statute cited was not effective at the time of defendant's alleged acts, the crime of aggravated sexual assault pursuant to repeated nonconsensual sexual acts existed and was properly described

---

[18] Because the information was sufficient as written to put defendant on notice of the charge against him, there was no need to amend the information. Therefore, it is not necessary to reach the question of whether the trial court had authority under Vermont Rule of Criminal Procedure 7 to sua sponte amend the information after trial.

in the information. During the period of the acts described in the information, aggravated sexual assault was a crime where "[t]he victim is subjected by the actor to repeated nonconsensual sexual acts as part of the same occurrence or the victim is subjected to repeated nonconsensual sexual acts as part of the actor's common scheme and plan." See 1989, No. 293 (Adj. Sess.), § 6. The information set forth all of the essential elements of this charge alleging that defendant had repeatedly sexually assaulted the victim as part of a common scheme and plan. Thus, the description of count two in the information provided defendant with a "plain, concise, and definite written statement of the essential facts constituting" aggravated sexual assault and satisfied Rule 7(b)'s notice requirement. V.R.Cr.P. 7(b).

¶ 62. In addition, defendant did not suffer prejudice from the use of the incorrect citation. Certainly, the statutory reference itself was not prejudicial. See State v. Bowers, 673 S.W.2d 887, 888 (Tenn. Crim. App. 1984) ("[T]he erroneous recitation of a statute is mere surplusage and not fatal to the charging instrument."). The question is whether prejudice resulted from the inclusion of other extraneous information that flowed from the use of the wrong statute. Because the statute cited in the information had an additional element, requiring that the act be committed against a child, the ages of the actor and victim were included in the information. See 13 V.S.A. § 3253a(a). The majority concedes that the superfluous content in the information regarding the ages of the actor and the victim did not require reversal. See State v. Eaton, 191 P.3d 1270, 1274 (Wash. 2008) (explaining that surplus information in charging document does not require reversal unless "it prejudices the accused either by misleading him in making his defense or by exposing him to double jeopardy"). Defendant's theory at trial was not dependent on his age or that of the victim. Defendant wholly denied the accusation and the trial was about the credibility of the victim's accusations.

¶ 63.   Further, no prejudice resulted to defendant from the fact that the information listed a mandatory minimum of twenty-five years, which was inapplicable to defendant, whose behavior was criminalized by § 3253(a)(9) and not § 3253a(b).   There was no actual prejudice because defendant was sentenced under the correct statute and was not subjected to the mandatory minimum.  An incorrect statutory citation does not require reversal if "all of the essential elements of the correct statute are otherwise covered" and the sentence is imposed under the correct statutory range.  United States v. Walker, 557 F.2d 741, 746 (10th Cir. 1977); see Moore v. State, 264 So. 2d 414, 415 (Miss. 1972) (holding that even though indictment cited statute that did not become effective until after alleged crime was committed there was no error where action was criminal prior to statutory change and penalty did not change).

¶ 64.   The majority concludes that defendant was nonetheless prejudiced because he could not know with certainty the possible penalty he faced and this "informed all aspects of his defense, including whether to attempt to negotiate a plea deal."  Ante, ¶ 56.  This conclusion is faulty for two reasons.  First, the possible impact on plea negotiations is not part of the prejudice determination.  Prejudice is measured by whether a defendant is able to prepare "an intelligent defense."  State v. Brown, 153 Vt. 263, 272, 571 A.2d 643, 648 (1989); see Christman, 135 Vt. at 60, 370 A.2d at 625 (explaining that test of whether information is sufficient is whether it will enable accused "to make intelligent preparation for his defense").  Here, defendant does not even allege that he was impeded in preparing his defense by the inclusion of the incorrect statutory citation and mandatory minimum sentence.  He was put on notice of all elements of the crime alleged, the jury was charged with resolving all necessary elements, and defendant was sentenced under the correct sentencing range.

¶ 65. Second, even if prejudice could be imputed based on the presence or absence of an incentive to accept a plea agreement, there is no such allegation or demonstration in this case. At no time, either before the trial court or on appeal did defendant allege that he was prejudiced during plea negotiations. Further, it is insufficient for defendant to allege that he subjectively believed that he could receive a mandatory minimum and that caused him to reject the possibility of a plea agreement. Determining prejudice is not subjective. It is an objective inquiry of whether the facts alleged are sufficient to put the defendant on notice of the charge against him. Christman, 135 Vt. at 60, 370 A.2d at 625. "The statute on which an indictment is founded is to be determined from the facts charged in the indictment, and the facts pleaded may bring the offense within one statute, although another statute is referred to in the indictment." Enzor v. United States, 262 F.2d 172, 174 (5th Cir. 1958). Objectively, the information and accompanying affidavit set forth the elements of aggravated sexual assault pursuant to a common scheme and therefore provided defendant with notice that his conduct was being punished pursuant to 13 V.S.A. § 3253(a)(9). See United States v. Kennington, 650 F.2d 544, 546 (5th Cir. 1981) (rejecting defendant's argument that he was influenced to plead not guilty and therefore prejudiced by incorrect citation in indictment to statute with maximum five-year sentence where proper charge, which had a higher maximum sentence, was evident from facts in charging information).

¶ 66. Because the information provided defendant with a definite statement of all essential elements of the charge of aggravated sexual assault and he suffered no prejudice from inclusion of the incorrect statutory citation, I would affirm this conviction.

_____

Chief Justice