## State of Vermont v. Richard Ploof

[649 A.2d 774]

No. 92-276

Present: Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.

Opinion Filed September 16, 1994

*Howard E. VanBenthuysen,* Franklin County State's Attorney, St. Albans, for Plaintiff-Appellee.

*Dori Jones,* Burlington, for Defendant-Appellant.

**Allen, C.J.** Defendant appeals from an order of the Franklin District Court denying his motion to strike his sentence, following his conviction of second-degree murder. We affirm.

Defendant was accused of stabbing and killing Timothy Papineau, following a failed marijuana transaction, and was charged with

second-degree murder in September 1990. He immediately moved for a competency evaluation, which was completed about a month later by psychiatrist William Woodruff, who reported to the court and the parties that he believed defendant was competent to stand trial. Dr. Woodruff examined defendant again prior to a status conference in March 1991, and a third time in June 1991.

Defendant represented himself from the middle of April to the middle of June 1991, at which time the court ruled that he was not competent to represent himself. The court stated:

> After much consideration of the facts and issues, the Court concludes that the Defendant should be represented by a public defender. This action will protect the Defendant and utilize the legal safeguards available to him. Moreover, there is enough in the Court's eyes to question his competency to conduct a reasonable defense. Therefore, the Court reappoints the Public Defender until the Court is satisfied that he is sufficiently competent to represent himself.

In November 1991, defendant changed his plea to guilty, pursuant to a plea agreement, but no claim of incompetency was then raised by defendant or his attorney, or by the State or the court.

Still represented, defendant was sentenced in December 1991. At the sentencing hearing, the State revealed two incident reports it had received a short time earlier concerning defendant. The following colloquy ensued:

> [State's Attorney]: Just to indicate to The Court at least so the record is clear that upon information and belief, the State had received information that Mr. Ploof might be contemplating some kind of outburst or demonstration or something even more sinister for his appearance, either for the visitation or for the court appearance. Our concern is the safety of everyone here, that we wanted to alert The Court and Mr. Dunham to that possibility, in light of the fact that the sheriff may have to adjust to some more stringent controls.

> THE COURT: Well, you are not required to make any comments, but certainly we will give you that opportunity.

> [Defendant's Counsel]: Well, Your Honor, my client is expecting that he would of course have his leg shackles on during his visit this morning, but not to be restrained as he is currently, at least during the visit. We have no concerns that he has anything

in mind other than having the best possible visit with the family
. . . .

The sentencing proceeding occurred without incident, and defendant was given a sentence consistent with the plea agreement of twenty years to life, split to serve twenty-five years.

Defendant moved twelve days thereafter to strike the sentence, on grounds that he had been incompetent at the time of sentencing. His motion stated, in relevant part, with respect to defendant's state on the date of sentencing:

1. At the time of sentencing, Richard Ploof's sole goal was to be sentenced so that his life was in order so that he could promptly commit suicide. He planned to end his life in open court as soon as sentence was pronounced. However, in order to secure his last visits, he had to promise to abandon the plan. This left Richard Ploof in a total state of mental confusion.

2. During the two weeks prior to sentencing, Richard Ploof was suicidal and injured himself on several occasions, including Thanksgiving.

3. Richard Ploof was not competent at sentencing.

The trial court rejected defendant's assertion that he had been suicidal on the date of sentencing, finding instead that the defendant intended to obtain further concessions from the State in the plea bargaining that continued right up to sentencing. The court also found that just prior to the sentencing hearing, the court specifically asked defendant and the State whether either had any concern about defendant's competency, and neither side indicated any such concern.

The court concluded that defendant had waived his rights to assert incompetency at the sentencing hearing by not raising the issue and that, during sentencing, the trial court did not have reason to believe that defendant may not be competent to stand trial within the meaning of 13 V.S.A. § 4817. The present appeal followed.

■ Defendant contends first that the court violated V.R.Cr.P. 11(c) and his due process rights by accepting his guilty plea without determining that he understood the nature of the charges and the minimum and maximum penalties, in violation of V.R.Cr.P. 11(c)(1) and (2). Defendant did not raise this issue at sentencing, nor did he raise it in his post-sentencing motion, supplemental motion, or proposed findings. It is therefore understandable that the trial court did not rule on the issue in the decision from which the present appeal has been taken. We held in *State v. Thompson*, 162 Vt. 532, 534, 650

A.2d 139, 140 (1994), that "an issue under Rule 11(c), alleging violations in taking a plea, absent plain error, demands a factual record and opportunity for the trial court to grant relief before this Court may properly review it." See also *State v. Doleszney*, 139 Vt. 80, 81, 422 A.2d 931, 932 (1980) (an appeal challenging the voluntariness of a plea is appropriate only upon the trial court's denial of a timely motion to withdraw a guilty plea).

The first mention of this issue is in defendant's brief before this Court, which does not discuss the question of plain error. Upon our own examination of the record, the case against plain error is strong. As his own brief states, defendant conceded on the record that he knew that he was charged with second-degree murder and that the potential penalty was not less than ten (10) years and not more than life. Defendant conducted the early stages of his plea bargain negotiations pro se and was made aware of both the nature of the offense charged and the potential penalties. The State placed clear and adequate information about the nature of the offense on the record, in the presence of defendant. See *In re Kivela*, 145 Vt. 454, 457–58, 494 A.2d 126, 128–29 (1985).

Moreover, we have always required a practical and functional application of V.R.Cr.P. 11—not as a technical formula, but rather as a guideline to insure fairness to a defendant in the taking of a plea. See *In re Hall*, 143 Vt. 590, 594–95, 469 A.2d 756, 758 (1983) ("It is enough that the court engages in an open dialogue with the defendant involving . . . the Rule 11(c) elements to the end that the court is satisfied, and the record substantiates, that the defendant knows and understands the full array of legal consequences that attach to a guilty plea.").

■ Defendant next argues that defendant was incompetent at the time he pled guilty and that the plea should therefore be stricken. Defendant emphasizes the absence of a competency hearing at any stage of the proceedings, though conceding that he was examined and found to be competent on at least three occasions. Defendant, however, never requested a competency hearing, and given the number and consistency of the competency examinations, it is clear that the issue of competency was not raised until after the sentencing hearing. We held in *In re Hanson*, 160 Vt. 111, 114, 623 A.2d 466, 467–68 (1993):

The manifest purpose of § 4817(b) is to prevent the trial of a defendant who is not competent to stand trial, and in carrying

out that purpose, to resolve any disputes about competency through an adversarial hearing. The keystone is the court's responsiveness to the competency question, whenever and however it is raised. When a party raises competency and then fails to pursue the issue, the court must conduct a hearing only if it is not satisfied that the issue about defendant's competency to stand trial was adequately resolved. There is no question on the present record that neither petitioner nor the State wanted to pursue the competency question after [the examining physician] had performed his examination.

In like manner, there is no question that neither defendant nor the State sought to pursue the issue of competency after the series of examinations by Dr. Woodruff.

■ Defendant next contends that in ruling that defendant was not competent to represent himself, the court effectively concluded that he was incompetent to stand trial. On June 20, 1991, the court conducted a hearing with respect to defendant's pro se status. The court thereafter found that "[t]he defendant was angry and uncooperative during the hearing. He has a well-documented history of anger." The court also noted that "Defendant is charged with a serious crime with a range of allowable punishment from 20 years to life depending upon the aggravating and mitigating circumstances." The court concluded that defendant should be represented by the public defender:

> This action will protect the Defendant and utilize the legal safeguards available to him. Moreover, there is enough in the Court's eyes to question his competency to conduct a reasonable defense. Therefore, the Court reappoints the Public Defender to represent the Defendant until the Court is satisfied that he is sufficiently competent to represent himself.

It is clear that the court's ruling was limited to defendant's capacity to represent himself in a murder trial, not his competency to stand trial. Defendant never argued at trial that the determination with respect to pro se representation amounted to a finding of incompetency to stand trial. The plea bargaining, change of plea, and sentencing all followed the ruling on the need for counsel, without any suggestion that the matter of competency had been effectively determined by the court. Indeed, the plea bargain and change of plea would have made no sense in the context of a positive ruling on competency. Nor does defendant cite any precedent for the proposi-

tion that competence to stand trial necessarily implies competence to defend oneself against serious felony charges.

■ Finally, defendant contends that the existence of the two incident reports suggesting that defendant might attempt disruptive actions at sentencing gave the court reason to believe that defendant may not be competent to stand trial within the meaning of 13 V.S.A. § 4817(b). The trial court, however, specifically found that none of his actions or his statements to the court during the proceedings suggests he would take his life or act out inappropriately.

Defendant argues that he presented evidence at the motion to strike that he had been suicidal and injured himself during the two weeks before sentencing, was not taking his medications, and was unable to think or act rationally in his own best interests. Defendant treats these assertions as revelations, but the record clearly indicates they were not matters unknown to defendant's examining physician or the court. The court sua sponte ordered a competency evaluation after receiving an unsubstantiated report of the defendant's attempted suicide. Dr. Woodruff's assessments were directed at defendant's mental status generally, and not the impression generated by any specific event. Bizarre behavior, even including suicide attempts, are factors suggesting a state of mind and not ipso facto indicators of any particular mental state. See *Boag v. Raines*, 769 F.2d 1341, 1343 (9th Cir. 1985), *cert. denied*, 474 U.S. 1085 (1986) (prior suicide attempts, head injuries, bizarre behavior, and alcoholism did not raise new doubts about competency and did not require competency hearing); *People v. Holman*, 450 N.E.2d 432, 435 (Ill. App. Ct. 1983) (even evidence of established history of neurological problems does not by itself require competency hearing).

In sum, even without reference to the trial court's suggestion that defendant's claims of incompetency and the conduct on which they rested were an exercise in gamesmanship, defendant's allegedly suicidal conduct was fairly and thoroughly considered by the court, which found it unconvincing. There is no basis to question the court's acceptance of Dr. Woodruff's evaluations finding defendant competent to stand trial.

*Affirmed.*