NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2018 VT 85

No. 2018-014

| | |
|---|---|
| State of Vermont | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Washington Unit, |
| | Criminal Division |
| | |
| Ernest Phillips | May Term, 2018 |

Howard E. Van Benthuysen, J.

David Tartter, Deputy State's Attorney, Montpelier, for Plaintiff-Appellee.

Jessica Burke of Burke Law, PC, Burlington, for Defendant-Appellant.

PRESENT: Reiber, C.J., Skoglund, Robinson, Eaton and Carroll, JJ.

¶ 1. **CARROLL, J.** Defendant Ernest Phillips filed an interlocutory appeal of the trial court's denial of his motion to accept a plea agreement after lengthy litigation in the criminal division concerning defendant's alleged sexual contact with two minors between 2012 and 2014. He argues that the trial court accepted his proposed plea agreement and therefore could not subsequently reject it. In addition, he argues that the trial court's reasons for rejecting the proposed plea agreement are legally invalid. We granted permission for the interlocutory appeal on the following questions: (1) may a defendant waive the right to a direct appeal as a condition of a plea agreement; (2) may a defendant enter a plea to a reduced criminal charge based upon a statute that did not exist at the time of the commission of the original offense; and (3) is the trial court authorized to reject a plea agreement after accepting it. We answer the first question in the

affirmative and therefore do not need to reach the second question. The third question is moot because we hold that the trial court never accepted the plea agreement. Accordingly, we remand to the trial court to reconsider whether to accept or reject the plea agreement consistent with this opinion.

¶ 2. In November 2012, the Vermont State Police investigated allegations that defendant had sexual contact with two female minors pursuant to a complaint received from a dance school where defendant worked as an instructor. The complaint alleged that defendant had engaged in sexual contact with a seventeen-year-old student and a fifteen-year-old student. The police interviewed only the first alleged victim, who denied any sexual relationship with defendant. Thereafter, the investigation became inactive.

¶ 3. In 2016, during a background check investigation, the first alleged victim admitted that she had not been truthful with the police during the initial 2012 investigation. She subsequently told the police that she had in fact had sexual contact with defendant and provided the name of the second alleged victim. Police interviewed the second alleged victim, who asserted that she had also had sexual contact with defendant during the period in question. After obtaining a warrant, police recorded a phone call between the first alleged victim and defendant. During the call, the first alleged victim asked defendant whether she should "lie to [the police] all over again." Defendant advised her to "stick with the story you had before." The State charged defendant on April 13, 2016, with four counts of sexual assault of a minor under 13 V.S.A. § 3252(c) and two counts of sexual exploitation of a minor under 13 V.S.A. § 3258(c).

¶ 4. On December 16, 2016, the charges were amended to one count of sexual assault of a minor under 13 V.S.A. § 3252(c), one count of sexual exploitation of a minor under 13 V.S.A. § 3258(c), and one count of lewd or lascivious conduct with a child under 13 V.S.A. § 2602. Nearly a year later, on October 27, 2017, the parties negotiated a plea agreement stipulating that defendant plead guilty to two counts of prohibited conduct under 13 V.S.A. § 2601a(a), in lieu of

2

the counts under §§ 3252(c) and 3258(c), in exchange for dismissal of the third charge under 13 V.S.A. § 2602 and a recommended deferred sentence of three years, under certain probation conditions.[1] That same day, the parties informed the trial court of the proposed plea agreement during a status conference. The parties also explained in chambers that the alleged victims opposed the plea agreement. At the end of the status conference, the trial court indicated that the next hearing may be a combined change of plea and sentencing hearing and kept the notice of plea agreement, deferred sentence, and probation order. The trial court also informed the second alleged victim's attorney of the impending hearing.

¶ 5. At the ensuing hearing, the court suggested that a condition be added to the plea agreement that defendant "not engage in teaching activities with females under the age of eighteen." Defendant refused to accept this additional condition, believing that it would preclude him from teaching in any facility where women under the age of eighteen were present. The court insisted that the condition was necessary to its acceptance of the plea agreement and stated that, given defendant's reluctance, the plea agreement was not accepted. Defendant subsequently agreed to the condition upon clarification that it would only prevent him from teaching classes containing women under the age of eighteen, but not preclude him from teaching other individuals in a facility where women under the age of eighteen may otherwise be present. The State approved of the condition.

¶ 6. The court then began a colloquy with defendant under Vermont Rule of Criminal Procedure 11.[2] The trial court interrupted the colloquy to express its doubts that defendant could

---

[1] The plea agreement contained "standard" probation conditions A, B, F, G, and J, requiring that defendant: (1) notify his probation officer within forty-eight hours if arrested or cited for a new offense; (2) not be convicted of a new offense; (3) notify his probation officer within two days of any change in address; and (4) allow a probation officer to visit him where he was living.

[2] V.R.Cr.P. 11(c) requires, among other things, that a court, prior to accepting a plea of guilty or no contest, address the defendant in open court and inform the defendant of and determine

plead guilty under 13 V.S.A. § 2601a, given that the statute did not exist at the time of defendant's alleged wrongful conduct.[3]  Defendant asserted that this would not be a problem given that his alleged conduct was proscribed by a different statute at the time.  The court then suggested bypassing any potential problem by having defendant waive his right to appeal or petition for post-conviction relief, thus insulating the case from appellate review.

¶ 7.    The trial court asked defendant whether defendant was agreeing to waive appeal of the ex post facto issue; defendant confirmed that he was.  The trial court explained the nature of post-conviction relief and asked the defendant if he understood the implications of an appeal; defendant affirmatively confirmed his understanding of these procedures.  The trial court repeatedly asked defendant if he wished to waive his right to appeal; each time, defendant responded in the affirmative.  When asked by the trial court whether he "underst[ood] what that means," defendant replied, "I do."  When asked by the trial court whether he was "doing that freely and voluntarily," defendant responded, "[y]es, I am."

¶ 8.    After consulting with his lawyer during a recess, defendant indicated his desire to proceed with the plea agreement.  The court accepted defendant's guilty pleas to both counts of prohibited conduct contained in the plea agreement and indicated that it would "enter judgments of guilty on both [counts]."  The third charge was dismissed.

---

that the defendant understands: the nature of the charges to which the plea is offered; the mandatory minimum and maximum penalties provided for the offense to which the plea is offered; that the defendant has the right to plead not guilty; that if the defendant's guilty plea is accepted there will be no further trial or the rights associated with a trial, such as the privilege against self-incrimination; that, if there is a plea agreement that has not been accepted pursuant to V.R.Cr.P. (11)(e)(3), the court is not limited in the sentence it may impose by such agreement; and the collateral consequences of a conviction.  V.R.Cr.P. 11(d) also requires that the court not accept a plea of guilty or nolo contendere without first determining, by addressing the defendant personally in open court, that the plea is voluntary and not the result of force or threats or of promises apart from a plea agreement.

[3]  Section 2601a became effective in 2017.  See 2017, No. 44, § 1.  Thus, this statute did not exist when defendant's alleged conduct occurred.

¶ 9.    The court then heard statements from both alleged victims, read by their representatives, condemning the plea agreement and expressing a strong desire that the case go to trial. The second alleged victim's attorney indicated that neither he nor his client were part of the plea negotiations. When asked by the court to comment, the State explained that although victims have a statutory right to be heard at sentencing, "[t]hey do not have any rights to be involved in plea negotiations." The court asked defendant whether he had "any other argument as to sentencing," to which defendant's attorney replied, "[n]o, we'd just ask the Court to adopt the agreement." The court then expressed its doubts as to whether recent amendments to 13 V.S.A. § 5321 had been satisfied, which require, among other things, that prosecutors involve victims throughout the plea agreement negotiation process. The court stated that the alleged victims, despite both being represented by counsel, had not been fully involved in the process of crafting the plea agreement or proposed probation conditions, and had not otherwise been involved or consulted in the negotiation process. The court clarified that it was "not saying that it will or will not accept the plea agreement, but [it] [was] saying that . . . a brief period is required to allow the prosecutor's office . . . to fully consult with the victims about the proposed probation conditions." The court ended the hearing stating that the case would be resolved shortly with "either an acceptance of the plea agreement and a sentencing under the plea agreement to the deferred sentence or some other outcome . . . ."

¶ 10.    The trial court and prosecutor signed and dated the second draft of the notice of plea agreement on November 1, 2017.[4] Defendant and his attorney both signed and dated the agreement on November 9, 2017. All parties, including the trial court, signed and dated the deferred sentence and probation order form on November 9, 2017.

---

[4] This draft of the plea agreement was not created until November 9, 2017. Thus, the date added by the trial court was incorrect. As this error has no effect on our decision here, we do not address it further.

¶ 11.    A week later, on November 16, 2017, defendant filed a motion to accept the plea agreement.  Nearly a month later, on December 8, 2017, defendant filed a motion to enforce the plea agreement.  The trial court denied both motions, instead issuing an order rejecting the plea agreement and expressing doubt that a defendant could either waive the right to appeal or plead guilty under a statute that did not exist at the time of the alleged criminal conduct.  Defendant subsequently filed a motion in the trial court seeking interlocutory appeal on three grounds: (1) the trial court accepted the plea agreement and could not thereafter reject it; (2) the trial court erred in determining that a defendant cannot waive the right to appeal as a condition of entering into a plea agreement; and (3) the trial court erred in determining that a defendant may not plead guilty under a statute that did not exist at the time of the alleged offense.  The trial court issued an order granting interlocutory appeal on the latter two issues.  On the first issue, the trial court denied the request for interlocutory appeal, finding that it had "made it clear under Rule 11 that it was uncertain about and reserving on the acceptance of the plea agreement."  This Court granted interlocutory appeal on all three issues identified by defendant.

¶ 12.    Defendant now raises three arguments: (1) the trial court's grounds for rejecting the plea agreement were legally incorrect; (2) the trial court accepted the plea agreement by, among other things, accepting the defendant's guilty pleas and signing the deferred sentencing order and the notice of plea agreement; and (3) the court, having accepted the plea agreement, could not rescind its acceptance by subsequent written order.  The State concedes the validity of defendant's first argument.  But because the issues implicated in this argument are likely to arise again, we nonetheless briefly address it.

¶ 13.    The trial court's rejection of the proposed plea agreement rested on two grounds: first, that defendant could not waive his general right to appeal as a condition of the plea agreement; and second, that defendant could not plead guilty under 13 V.S.A. § 2601a, given that the statute did not exist at the time of defendant's alleged conduct.  On the former point, defendant argues

6

that "it is universal practice in Vermont to waive the right to direct appeal following a guilty plea," and furthermore that such a waiver is explicitly authorized by our holdings in In re Torres, 2004 VT 66, 177 Vt. 507, 861 A.2d 1055 (mem.), and State v. Hance, 157 Vt. 222, 596 A.2d 365 (1991). On the latter point, defendant argues that there is no Ex Post Facto Clause issue in this case because the statute under which defendant pleaded guilty provided for a lesser punishment than those under which he was initially charged. Because we conclude that defendant's waiver of his right to appeal is permissible, we do not reach the ex post facto issue in this case.

¶ 14.    Accordingly, we turn to the trial court's rejection of the plea agreement for the reason that defendant could not waive his general[5] right to appeal.[6]  Our review of this question of law is de novo. State v. Valyou, 2006 VT 105, ¶ 4, 180 Vt. 627, 910 A.2d 922 (mem.).  We have explained that " '[i]t is well settled that a defendant who knowingly and voluntarily enters a guilty plea waives all nonjurisdictional defects in the prior proceedings.' "  Torres, 2004 VT 66, ¶ 9 (quoting United States v. Garcia, 339 F.3d 116, 117 (2d Cir. 2003)); see also Hance, 157 Vt. at

---

[5] The record in this case, as well as the trial court's decision, is somewhat unclear regarding whether defendant was waiving all rights to appellate review or waiving only his right to appeal on grounds that the charges against him raised an ex post facto issue. Thus, we address these two issues separately.

[6] Although our review of questions of law is de novo, and thus without deference to the trial court, we note that the trial court cited both State v. Buck, 139 Vt. 310, 428 A.2d 1090 (1981), and In re Jankowski, 2016 VT 112, 203 Vt. 418, 157 A.3d 573, to support its rejection of the proposed plea agreement.  Neither case is controlling here.  In Buck we stated that we could "neither condone or enforce" a waiver of the right to appeal and that "[t]he right of appeal from a criminal conviction is conferred absolutely by statute, and its restriction or prohibition as a condition of sentence deferment cannot be reconciled with that statute."  139 Vt. at 314-15, 428 A.2d at 1093.  But as we explained in Hance, this statement was dicta.  157 Vt. at 224, 596 A.2d at 366.  We nonetheless referred to the Buck dicta in Jankowski, which could suggest reliance on Buck.  But our holding in Jankowski did not turn on whether a defendant could potentially waive the right to appeal—rather, our holding turned on the paucity of the record in that case.  We explained that the sentencing hearing lasted only ten minutes, seven of which were spent in recess, and that the defendant was silent throughout the hearing.  Thus, our decision in Jankowski turned on the trial court's failure to establish that "the totality of the circumstances . . . nonetheless demonstrate[d] that the waiver was knowing and voluntary," which, we expressly noted was "the basis of our decision."  2016 VT 112, ¶ 26.

224, 596 A.2d at 366 ("[O]ur decisions authorize a defendant to waive virtually any right, constitutional or statutory, as long as the waiver is knowing, intelligent, and voluntary.").[7] Thus, the question in this case is whether defendant's waiver was knowing and voluntary. We conclude from the totality of the circumstances that the trial court established that defendant's waiver of his right to appeal was both knowing and voluntary. See Jankowski, 2016 VT 112, ¶ 26.

¶ 15. Here, the trial court personally addressed defendant, asking multiple questions, ensuring that defendant was knowingly and voluntarily waiving his rights to appeal and to pursue post-conviction relief. The trial court explained the nature of post-conviction relief and appeal proceedings and asked defendant whether he understood. Defendant responded affirmatively. The trial court asked defendant whether he wished to give up his right to pursue post-conviction relief. Defendant responded affirmatively. The trial court repeatedly asked defendant whether he wished to waive his right to appeal. Each time, defendant responded affirmatively. Finally, when asked whether he was waiving his right to appeal freely and voluntarily, defendant responded, "[y]es, I am." Defendant does not contend that his plea was not freely or voluntarily given, nor is there any contrary indication in the record.

¶ 16. This Court has consistently recognized that the U.S. Constitution's Ex Post Facto Clause prohibits the passage of laws that retroactively increase the punishment for a crime after it was committed. See, e.g., Wool v. Pallito, 2018 VT 63, ¶ 9; __Vt. __, __ A.3d __; State v. Rondeau, 2016 VT 117, ¶ 14, 203 Vt. 518, 159 A.3d 1073. Here, it is readily apparent that 13

---

[7] This is not a blanket rule. We have recognized that the "knowing and voluntary" requirement necessarily compels a number of limited exceptions to the general rule that a defendant can waive virtually any nonjurisdictional right. See Torres, 2004 VT 66, ¶ 9 (citing cases recognizing host of rights that defendants who plead guilty cannot waive, including, among others, right to challenge ineffective assistance of counsel, competency determination, and right against self-incrimination at sentencing); see also United States v. Schuman, 127 F.3d 815, 818 n.* (9th Cir. 1997) (Kozinski, J., concurring) (identifying potential exceptions to waiveability of appeal rights). Our general recognition that a defendant may knowingly and voluntarily waive the right to appeal nonjurisdictional defects in the prosecution may be subject to a number of exceptions that are not germane to the issues in this case.

V.S.A. § 2601a does not provide for a greater punishment than its closest equivalent in existence at the time of the alleged conduct. Compare 13 V.S.A. § 2601a (up to one-year imprisonment and/or $300 fine), with id. § 2601 (up to five-year imprisonment and/or $300 fine). Nor could it fairly be said that the stipulated-to application of 13 V.S.A. § 2601a in these circumstances would implicate a "lack of fair notice and governmental restraint"—the central concerns of Ex Post Facto Clause—given that defendant's alleged conduct was criminal at the time it was alleged to have occurred. Lynce v. Mathis, 519 U.S. 433, 441 (1997) (quotation omitted).

¶ 17. On the other hand, there is no indication that the legislature intended § 2601a to apply retrospectively. Nor are the elements of §§ 2601 and 2601a equivalent. Compare 13 V.S.A. § 2601a (prohibiting "open and gross lewdness"), with id. § 2601 (prohibiting "open and gross lewdness and lascivious behavior"). Answering whether the proposed retroactive application of § 2601a violated the Ex Post Facto Clause would require more analysis than is warranted here.

¶ 18. Assuming, without deciding, that the retroactive application of 13 V.S.A. § 2601a creates an ex post facto issue, we hold that such an issue may be waived under these particular circumstances. We note that courts around the nation have upheld knowing and voluntary waivers of ex post facto arguments. See, e.g., United States v. Riggi, 649 F.3d 143, 148 (2d Cir. 2011) (holding ex post facto argument waived as part of plea agreement); United States v. Gilcrist, 106 F.3d 297, 301 (9th Cir. 1997) (holding defendant waived ex post facto argument by expressly agreeing to harsher guidelines at sentencing); State v. Rogers, 4 P.3d 1261, 1264-68 (Or. 2000) (holding trial court erred in refusing to accept defendant's waiver of ex post facto protection). But see Ieppert v. State, 908 S.W.2d 217, 220 (Tex. Crim. App. 1995) (en banc) (holding state and federal ex post facto clauses are not individual waivable rights, but categorical prohibitions directed at government).

¶ 19. Here, defendant personally agreed to waive the ex post facto argument with respect to 13 V.S.A. § 2601a at the plea hearing and now argues that there is no such issue in this case.

9

Defendant knowingly and voluntarily agreed to a plea agreement that explicitly laid out charges under 13 V.S.A. § 2601a. See Gilcrist, 106 F.3d at 301. Moreover, both the State and defendant agree that the ex post facto argument, if any, may be waived in this case. Finally, we note that 13 V.S.A. § 2601a provides for a significantly lesser punishment than any of the other statutes under which defendant was previously charged, and additionally that defendant's alleged conduct was already prohibited at the time it was alleged to have occurred, which both support the conclusion that defendant voluntarily waived his appeal rights here. Under these circumstances, we hold that a defendant may knowingly and voluntarily waive ex post facto protections.[8] Accordingly, the trial court's rationale for rejecting the plea agreement is legally invalid.

¶ 20. This brings us to the central issue in this case—whether the trial court accepted the parties' proposed plea agreement. Defendant argues that the trial court accepted the plea agreement by, among other things, (1) accepting and entering defendant's guilty pleas and dismissing the remaining charge, and (2) signing the notice of plea agreement and deferred sentencing order. Defendant further contends that the trial court could not subsequently revoke its acceptance of the plea agreement and is thereby bound. The State responds that the trial court did not accept the plea agreement because the procedure in V.R.Cr.P. 11(e)(3) was not satisfied, as required by V.R.Cr.P. 11(e)(2). We conclude that the trial court did not accept the plea agreement, despite the court's acceptance of defendant's pleas, dismissal of the remaining charge against defendant, and signature on the notice of plea agreement and deferred sentencing order.

---

[8] We stress that our holding here is confined to the particular facts in this case. Therefore, we do not hold that ex post facto issues are categorically waived by the knowing and voluntary waiver of nonjurisdictional issues. For a related discussion of the waiver of the right to appeal constitutional violations, see Class v. United States, __ U.S. __, 138 S. Ct. 798, 803-06 (2018).

¶ 21. Defendant's first argument conflates the acceptance of a guilty plea and the acceptance of a plea agreement. A plea agreement is an exchange between the parties, wherein the State and a defendant reach

> an agreement that, upon the entering of a plea of guilty or [no contest] to a charged offense or to a lesser or related offense, the prosecuting attorney will move for dismissal of other charges, or will recommend or not oppose the imposition of a particular sentence, or will do both.

V.R.Cr.P. 11(e)(1). The Rule expressly precludes the trial court from participating in the development of such an agreement, unless the court's participation is on the record, but does not contemplate a court's abdication of its duty "to insure the appropriateness of the correctional disposition reached by the parties and to guard against any tendency of the prosecutor to overcharge or to be excessively lenient . . . ." State v. Hunt, 145 Vt. 34, 41-42, 485 A.2d 109, 112 (1984) (quotation omitted).

¶ 22. Accordingly, and as defendant correctly notes, when a defendant has already entered a plea pursuant to a plea agreement and the trial court subsequently rejects or refuses to impose the sentence recommended by the plea agreement, the proper remedy is to give the defendant an opportunity to withdraw their plea. See, e.g., State v. Bergerson, 144 Vt. 200, 203, 475 A.2d 1071, 1073 (1984). Furthermore, the text of Rule 11 itself contemplates that guilty pleas and plea agreements be treated differently and that acceptance of a plea does not foreclose denial of a plea agreement for purposes of sentencing. Rule 11(e)(4) provides that "[i]f the court rejects the plea agreement or defers decision upon it, the court shall . . . afford a defendant who has already pleaded the opportunity to then withdraw his plea . . . ." Moreover, the provision of Rule 11(e)(2) on which defendant's argument relies simply states that a trial court, "before entry of the plea, may accept or reject the agreement, or defer its decision," but does not set out a requirement binding a trial court to a proposed plea agreement, even after acceptance of the plea. V.R.Cr.P. 11(e)(2) (emphasis added). The purpose of Rule 11(e)(2) is "to avoid the necessity of a formal

11

withdrawal of the plea if the agreement is rejected," not to require acceptance of the sentence included in a plea agreement where a court has accepted the defendant's pleas. Reporter's Notes, V.R.Cr.P. 11. We therefore conclude that the court's acceptance of defendant's pleas and dismissal of the remaining charge against defendant present no bar to the court's subsequent consideration of the plea agreement for purposes of sentencing.

¶ 23. Defendant's argument centers on the trial court's actions at the change of plea hearing, contending primarily that the trial court effectively accepted the plea agreement. We disagree. Rule 11(e)(2) sets out the procedure by which a plea agreement reached by the parties is disclosed:

> If a plea agreement has been reached by the parties which contemplates entry of a plea of guilty or [no contest] in the expectation that a specific sentence will be imposed or that other charges before the court will be dismissed, the court shall require the disclosure of the agreement in open court at the time the plea is offered. In a felony case, the prosecuting attorney shall disclose the reasons for entry into the plea agreement. Thereupon the court, before entry of the plea, may accept or reject the agreement, or defer its decision as to acceptance or rejection until there has been opportunity to consider the presentence report. The plea agreement shall not be binding upon the court nor shall it limit the court in the judgment and sentence to be imposed unless the court accepts the plea agreement under subdivision (e)(3) of this rule.

Rules 11(e)(3) and (4) set out the procedure by which a trial court either accepts, rejects, or defers its decision on a plea agreement:

> If the court accepts the plea agreement, the court shall inform the defendant that it will embody in the judgment and sentence the disposition provided for in the plea agreement or a less onerous disposition.
>
> . . .
>
> If the court rejects the plea agreement or defers decision upon it, the court shall inform the parties of this fact, advise the defendant personally in open court that the court is or may not be bound by the plea agreement, pursuant to Rule 32(d) afford a defendant who has already pleaded the opportunity to then withdraw his plea, and advise the defendant that if he persists in his plea the disposition of

12

the case may be less favorable to the defendant than that contemplated by the plea agreement.

The Rule is straightforward—a trial court has the discretion to accept or reject a plea agreement, or to defer such acceptance or rejection. The Rule accordingly sets out the mechanism by which the trial court completes its acceptance, rejection, or deferral. Defendant's argument thus essentially relies on a negative. That is, he contends that because the trial court did not explicitly decide to reject the plea agreement or explicitly defer its decision in the way required by the Rule, the trial court must be bound by the plea agreement.

¶ 24. This argument undercuts the importance of the process for accepting a plea agreement in Rule 11(e)(3), which requires the court to inform a defendant that the defendant will be sentenced in accordance with the agreement or with a lesser sentence. Here, not only did the trial court not expressly notify defendant that it would accept the plea agreement, the court also made multiple statements indicating that it was deferring a decision on the plea agreement. The trial court stated that it was "not saying that it will or will not accept the plea agreement" and concluded the change of plea hearing by stating "we will reconvene in approximately one week and complete this case either with an acceptance of the plea agreement and a sentencing under the plea agreement to the deferred sentence or some other outcome." At no point during or prior to the hearing did the trial court inform defendant, either explicitly or implicitly that "it will embody in the judgment and sentence the disposition provided for in the plea agreement or a less onerous disposition." V.R.Cr.P. 11(e)(3); State v. Delisle, 162 Vt. 293, 299, 648 A.2d 632, 636 (1994) ("[U]nlike Federal Rule of Criminal Procedure 11(e)(2), Vermont Rule 11(e)(2)-(3) explicitly provides that a plea agreement neither binds the court nor limits its imposition of judgment or sentence unless the court informs the defendant that the maximum judgment and sentence it will impose is the one provided for in the agreement."). Nor did it otherwise indicate its assent to be

bound by the restrictions in the plea agreement. Thus, the trial court in this case did not accept the proposed plea agreement.

¶ 25. Rather, the record here suggests that the court was deferring its decision on the plea agreement. We note, however, that the court's failure to expressly tell defendant that it was deferring its decision on the plea agreement, as contemplated in Rule 11(e)(4), does not require that we hold the court accepted the plea agreement. Such a result would be contrary to the express provisions of Rule 11(e)(2) and (3) and our caselaw.

¶ 26. Delisle and State v. Hendricks, both of which presented essentially the same issue as that raised by defendant in this case, control here. The Delisle defendant argued that "the trial court accepted, and thus was bound by, the terms of a plea agreement reached by the parties." Delisle, 162 Vt. at 298, 648 A.2d at 635. In that case, the trial court told the defendant that he would receive the agreed upon sentence "assuming that I'm able to consummate the plea agreement for you." Additionally, after accepting the defendant's guilty plea, the trial court informed the defendant of his right to withdraw his guilty plea "right through these proceedings." The trial court then declared its intention to order a presentence report, entered judgment on the defendant's guilty plea and stated that it would set a sentencing hearing after reviewing the presentence report. The trial court rejected the plea agreement for being too lenient. We rejected the defendant's argument in Delisle that the trial court accepted the agreement by failing to explicitly reject or defer a decision on it, despite its acceptance of the defendant's guilty plea. Id. at 299-300, 648 A.2d at 636-37.

¶ 27. Likewise, in State v. Hendricks the defendant argued that the trial court impliedly accepted the plea agreement by stating that the sentence in the agreement was "the worst that could happen to [him] at the sentencing hearing." 173 Vt. 132, 136, 787 A.2d 1270, 1274 (2001). We reaffirmed our holding in Delisle, noting that in that case we "rejected the argument that acceptance

14

of the plea agreement must be presumed unless the court explicitly rejects the agreement or defers its decision." Id.

¶ 28. Defendant argues that two primary factors distinguish this case from Delisle. First, unlike in Delisle, the trial court in this case did not inform defendant that he could withdraw his guilty pleas. Second, the trial court here went further than in Delisle, by considering the addition of a probation condition that defendant not work directly with females under the age of eighteen. In Delisle, we noted that "[w]hile we encourage the courts to follow subsection 11(e)(4) to the letter, we cannot conclude in this instance that the court accepted the agreement." 162 Vt. at 300, 648 A.2d at 636. Despite the trial court's failure in this case to inform defendant of his right to withdraw his pleas, as would have been required by Rule 11(e)(4), we cannot conclude that the trial court accepted defendant's proposed plea agreement for the same reason we explained in Delisle: a trial court cannot be bound by a plea agreement unless it somehow "inform[s] the defendant that it will embody in the judgment and sentence the disposition provided for in the plea agreement or a less onerous disposition." V.R.Cr.P. 11(e)(2)-(3). As we explained in Delisle:

> [B]ecause the Vermont rule states that the court is not bound by a plea agreement unless it informs the defendant that the strictest judgment and sentence it will impose is the one provided in the agreement, we reject defendant's argument that an acceptance must be presumed unless the court explicitly rejects the agreement or defers its decision. We recognize that the court did not defer its decision in the exact terms provided in subsection 11(e)(4), but the court suggested that it had not yet decided whether to accept the agreement, and it informed defendant that he could still withdraw his plea.

162 Vt. at 299-300, 648 A.2d at 636 (citation omitted). While here the trial court did not notify defendant that he could withdraw his plea, we did not rely on this factor in Delisle, and its omission here is not dispositive.

¶ 29. We also do not find significant the factual distinctions between this case and Hendricks, which defendant argues requires a different result. There, the trial court indicated its

15

deferral of consideration of the plea agreement before entering the defendant's pleas. Hendricks, 173 Vt. at 136, 787 A.2d at 1274. As noted above, Rule 11(e)(2) states that the trial court "before entry of the plea, may accept or reject the agreement, or defer its decision as to acceptance or rejection until there has been an opportunity to consider the presentence report."[9] But as we have already explained, the permissive "may" in this Rule does not require that a court expressly accept, reject, or defer prior to entry of the defendant's pleas. Thus, we do not read Hendricks to require that we hold the trial court in this case accepted the plea agreement simply because it accepted defendant's pleas.

¶ 30.  Defendant is correct in arguing that Delisle and Hendricks stand for the proposition that the acceptance of a plea agreement is based on an analysis of the totality of the circumstances. The relevant question to the acceptance of the plea agreement is whether the totality of the circumstances show that the trial court has accepted the plea agreement and the consequent requirement "that it will embody in the judgment and sentence the disposition provided for in the plea agreement or a less onerous disposition." V.R.Cr.P. 11(e)(3). We do not hold that a trial court may never implicitly accept a plea agreement by its actions. In this case, however, a fair reading of the record indicates that the trial court deferred its decision on the plea agreement.

¶ 31.  We likewise do not find defendant's reliance on State v. Lumbus, a decision of the Ohio Court of Appeals, persuasive. No. 99301, 2013 WL 5676242 (Ohio Ct. App. Oct. 17, 2013). In that case, the trial court denied the defendant's motion to withdraw his guilty plea and proceeded to sentence the defendant to five years imprisonment, two years above the amount the defendant and the State had negotiated by plea agreement, without notifying the defendant that it could

---

[9]  This phrase in Rule 11(e)(2) appears to suggest that a trial court may defer decision on acceptance or rejection of the plea agreement only to consider the presentencing investigation report. In practice, however, there are many legitimate reasons why a trial court may defer a decision on whether to accept a plea agreement, even in cases where there is no presentence investigation report.

16

impose a greater sentence than that recommended in the agreement. Id. at *6-9. The appellate court reversed, explaining that under Ohio caselaw "[a] trial court does not err by imposing a sentence greater than that forming the inducement for the defendant to plead guilty when the trial court forewarns the defendant of the applicable penalties, including the possibility of imposing a greater sentence than that recommended by the prosecutor." Id. at *9 (quotation omitted). The Lumbus decision does not draw a clear distinction between the acceptance of a plea and the acceptance of a plea agreement for purposes of sentencing, nor does the Ohio appellate court rely on the trial court's denial of the defendant's motion to withdraw his plea as support for its reversal of the trial court's sentencing decision. But, as explained above, under Vermont law, a trial court is required to impose only the sentence recommended in a plea agreement, or a lesser sentence, or to permit the withdrawal of a defendant's plea. See V.R.Cr.P. 11(e)(4). The differences between Ohio and Vermont practice make a difference here and render Ohio's approach to plea agreements unpersuasive.

¶ 32.    Finally, defendant contends that the fact the judge signed the deferred sentencing order in this case means that the court accepted the deferred sentencing agreement. Defendant introduces the following analogy: a criminal case is final when a sentence is imposed, and a court cannot revoke a guilty plea after imposing a sentence, and thus, because a deferred sentence is never actually imposed, a court could theoretically revoke a guilty plea and its accompanying deferred sentencing order at any time during the deferred sentence. But here again, a "plea agreement shall not be binding upon the court," unless the court "inform[s] the defendant that it will embody in the judgment and sentence the disposition provided for in the plea agreement or a less onerous" one. V.R.Cr.P. 11(e)(2)-(3). Contrary to defendant's argument, it would not serve the purposes of Rule 11(e) to hold that a plea agreement is categorically accepted by a court's signature on a form. Rule 11(e)(2) and (3) provide a method by which a trial court may accept a plea agreement, and further state that an agreement will not be binding on the court unless the

17

method is followed. Although a trial court's signature on an agreement is strong evidence of its acceptance, it is not a dispositive factor.[10] We recognize the uncertainty caused by the trial court's failure to follow Rule 11 to the letter, as well as its signatures on the undocketed notice of plea agreement and deferred sentencing order forms.[11] Criminal defendants have a strong interest in knowing for certain where they stand. However, the Rule itself plainly sets forth a standard at which point a plea agreement becomes binding upon the court.

¶ 33.    Our decision here does not rely on a hyper-technical reading of Rules 11(e)(2) and (3). Whether the trial court uses the precise language of Rule 11(e)(3) is not the important question, although precision on the part of trial courts is encouraged. See, e.g., State v. Ploof, 162 Vt. 560, 563, 649 A.2d 774, 776-77 (1994) ("Moreover, we have always required a practical and functional application of V.R.Cr.P. 11—not as a technical formula, but rather as a guideline to insure fairness to a defendant in the taking of a plea."); In re Hall, 143 Vt. 590, 596, 469 A.2d 756, 759 (1983) ("Although a more specific and careful enunciation of the Rule 11 elements is encouraged, the trial court's substantial compliance with those requirements afforded the defendant fair and just process."). It is critical, however, that the record reflect that the trial court actually informed the defendant, explicitly or implicitly, that it would adopt the agreement in its judgment and sentence. The underlying purpose of Rule 11(e) is to spread "all factors pertaining to any plea agreement reached" upon the record, so that "the under-the-table aura surrounding such agreements, and consequent public distrust of them, will be dissipated." Reporter's Notes,

---

[10] We need not determine the effect of a signed order that has not been docketed due to a clerical error because in this case the record is clear that the court did not intend to enter an order accepting the plea agreement but intended to defer its decision on taking the plea agreement.

[11] While it may be the practice in some counties for the judge who presides over a change of plea hearing to sign the plea agreement and other related documents, in order to memorialize the taking of the plea(s), especially when sentencing will happen at a later date, this practice complicates the very issues presented in this case. These documents should not be signed until the agreement and proposed sentence have been accepted by the court, so it remains clear when that important decision has actually been made.

V.R.Cr.P. 11.  Furthermore, Rule 11(e) serves to prevent abuse by allowing judicial review of the fairness of plea agreements in every case.  Id.  Neither the purpose nor the practical application of Rule 11(e) was satisfied here, and for that reason we conclude that the trial court did not accept the plea agreement in this case.

¶ 34.    Because we conclude that the plea agreement was not accepted, we need not consider whether the trial court could revoke the agreement after acceptance.

We answer the first question certified in this interlocutory appeal in the affirmative and do not reach the second question.  We find that the third question is moot because the court did not accept the plea agreement and remand for the trial court to reconsider whether to accept or reject the plea agreement and to conduct further proceedings consistent with this opinion.

FOR THE COURT:

_____

Associate Justice