NOTICE:  This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports.  Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2018 VT 50

No. 2016-385

In re Cynthia Pinheiro

Supreme Court

On Appeal from
Superior Court, Essex Unit,
Civil Division

March Term, 2018


Michael R. Kainen, J.

Allison N. Fulcher of Martin & Associates, Barre, for Petitioner-Appellant.

David Tartter, Deputy State's Attorney, Montpelier, for Respondent-Appellee.


PRESENT:  Reiber, C.J., Skoglund, Robinson, Eaton and Carroll, JJ.


¶ 1.      **ROBINSON, J.**  Petitioner Cynthia Pinheiro appeals the superior court's judgment for the State with respect to her petition for post-conviction relief (PCR).  In her PCR action, petitioner seeks to set aside her conviction for aggravated domestic assault on the basis that the plea colloquy was defective under Vermont Rules of Criminal Procedure 11(c) and (f) because the trial court failed to identify the mental element of the crime (that she acted willfully or recklessly) and to elicit a factual basis supporting that element.  We conclude that the plea colloquy was not substantially compliant with the requirements of Rule 11(c) and accordingly reverse.

¶ 2.      In September 2014, petitioner pled guilty to one count of aggravated domestic assault after an incident in which she shot her ex-boyfriend in the leg.  In connection with her plea, the sentencing court explained to petitioner the plea agreement and the potential consequences of

her plea, and she affirmed that she wanted to enter into the plea. In response to questions from the court, petitioner confirmed that she was able to think clearly, that nobody had made any threats or promises to her, and that she understood her right to have a trial. The court reviewed all of the rights petitioner would be giving up, as well as noting potential collateral consequences of a conviction, and petitioner affirmed her understanding and desire to move forward with the plea.

¶ 3. In describing what the State would have to prove at a trial, the court said the State would have to prove that petitioner had a domestic relationship with the victim, that she used a deadly weapon to assault him, and that she injured him. After the State's Attorney amended the charge, the court explained that the charge alleged that on the occasion in question, petitioner "was armed with a deadly weapon and caused serious bodily injury on a family or household member." The court never advised petitioner of the mental element of the aggravated domestic assault charge.

¶ 4. After the court's explanation, petitioner entered a guilty plea. The following exchange ensued:

> THE COURT: All right. And what is it that you did?
>
> THE DEFENDANT: I was—I thought I was trying to protect myself, because it was 4 o'clock in the morning and I was woken up—I take night pills and the dogs were all barking and I didn't really even see who it was through the door.
>
> [DEFENSE COUNSEL]: Could we stop for a second, please?
>
> THE DEFENDANT: I shot [the victim].
>
> THE COURT: Did you have a—had you had a—was—did he live in your house?
>
> THE DEFENDANT: Yes.
>
> THE COURT: The two of you had a relationship for a period of time?
>
> THE DEFENDANT: A long time ago.

It is not entirely clear from the record whether the defense counsel did, in fact, privately confer with defendant during this exchange. In any event, following this exchange, the court found a factual basis for the plea, adjudicated petitioner guilty, and set the matter for sentencing.

¶ 5. In December 2014, petitioner filed a PCR petition alleging several bases for relief. In her accompanying affidavit, she described the circumstances of the shooting, explaining that she was screaming at whoever was entering her house to leave, was unable to see without her glasses, and was in shock and fear. In her subsequent motion for partial summary judgment, petitioner argued that the plea should be set aside because the sentencing court never addressed the mental element of the crime, running afoul of Rules 11(c) and (f).

¶ 6. The PCR court denied the motion, concluding that the plea colloquy substantially complied with Rule 11. With respect to the argument under Rule 11(f), the court acknowledged that the sentencing court did not inquire about the mental element of the charge. Nevertheless, it concluded that the inquiry was not necessary in this case because the fact of recklessness is obvious from petitioner's statements in the colloquy. To the extent that petitioner's statements could be perceived as asserting some sort of self-defense argument, the court concluded that she apparently gave up on that argument when she stated simply, "I shot [the victim]." The PCR court did not address petitioner's arguments under Rule 11(c). After the PCR court denied petitioner's motion for partial summary judgment, petitioner withdrew her other claims and the court granted final judgment to the State with respect to her PCR petition so that she could appeal.

¶ 7. Petitioner renews her arguments here. We do not address petitioner's Rule 11(f) factual basis argument because we conclude that the trial court violated Rule 11(c) during the plea colloquy by failing to adequately explain the mental element of the charge to petitioner to ensure that she understood the law in relation to the facts.

¶ 8. "Summary judgment is appropriate where there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." In re Bridger, 2017 VT 79, ¶ 9,

3

__ Vt. __, 176 A.3d 489 (quotation omitted). We review the PCR court's summary judgment decision applying the same standard, without deference to the court's analysis. Id.

¶ 9.    As set forth more fully below, Rule 11(c) requires that a court entering a judgment on a guilty plea explain the elements of the charge to the defendant. This rule implements a constitutional requirement that the court ensure that the plea is knowing and voluntary. The rule requires substantial compliance to promote its ends, rather than technical conformity to a particular script; but where the record does not reflect that the defendant pled guilty with an understanding of the nature of the charge, the conviction based upon the guilty plea cannot stand. In this case, there is nothing in the record to provide assurance that petitioner understood the mental element of the crime to which she pled. If anything, the record demonstrates that she did not understand that unspoken element.

¶ 10.    In order to ensure the voluntariness of a plea, the court accepting a guilty plea must explain the elements of the charged offense to the defendant. State v. Kasper, 145 Vt. 117, 119-21, 483 A.2d 608, 609-11 (1984). In Kasper, this Court concluded that because the elements of the charged offenses were never explained to the defendant, "we cannot say that the defendant possessed an understanding of the law in relation to the facts." Id. at 121, 483 A.2d at 611 (quotation and alteration omitted). The Court therefore concluded that the plea was involuntary and vacated the defendant's convictions. Id.; see also State v. Gabert, 152 Vt. 83, 85, 564 A.2d 1356, 1358 (1989) (quoting Kasper, 145 Vt. at 120, 483 A.2d at 610 for proposition that "the record must reveal that the elements of each offense were explained to the defendant").

¶ 11.    This requirement is codified in Rule 11(c), which provides that the court "shall not accept a plea of guilty or nolo contendere without first, by addressing the defendant personally in open court, informing the defendant of and determining that the defendant understands . . . (1) the nature of the charge to which the plea is offered."

4

¶ 12. The rule, in turn, effectuates a constitutional imperative. See In re Morse, 138 Vt. 327, 330 n.2, 415 A.2d 232, 233 n.2 (1980) (recognizing that Rule 11(c) "merely codified those procedures that were constitutionally required by the case law then in effect regarding the acceptance of guilty pleas"); see also McCarthy v. United States, 394 U.S. 459, 465 (1969) ("[A]lthough the procedure embodied in [Federal Rule of Criminal Procedure 11] has not been held to be constitutionally mandated, it is designed to assist the [trial] judge in making the constitutionally required determination that a defendant's guilty plea is truly voluntary . . . . [and] to produce a complete record at the time the plea is entered of the factors relevant to this voluntariness determination.")

¶ 13. The federal law in effect at the time Vermont adopted its own Rule 11 is instructive. See Kasper, 145 Vt. at 119 (noting that Vermont's Rules of Criminal Procedure closely tracks federal rules, and drawing guidance from federal case law, in particular McCarthy, 394 U.S. at 459, in ascertaining requirements of Vermont's Rule 11). In McCarthy, the sentencing court reviewed the consequences of the plea with the petitioner, and questioned him concerning the voluntariness of his plea, but did not personally explain the nature of the charges and did not ensure that he understood them. The United States Supreme Court ruled that, because the sentencing court failed to comply with Rule 11(c), the petitioner was entitled to an opportunity to plead anew. 394 U.S. at 464-72. The Court rejected the suggestion that the proper remedy was to hold a post-conviction "voluntariness" hearing, explaining that Rule 11 is designed to eliminate the "need to resort to a later fact-finding proceeding," and that "[t]here is no adequate substitute for demonstrating in the record at the time the plea is entered the defendant's understanding of the nature of the [charges]." Id. at 469-70.

¶ 14. The Supreme Court's evaluation of the facts in McCarthy sheds light on the case before us. The petitioner in McCarthy had been "suffering from a serious drinking problem during the time he allegedly evaded his taxes." Id. at 470. He pled guilty to a crime that required a

5

"knowing and willful" attempt to defraud the government, but throughout the sentencing hearing he insisted that his acts were merely "neglectful." Id. Notwithstanding his guilty plea, the Supreme Court acknowledged that "it is certainly conceivable that he may have intended to acknowledge only that he in fact owed the Government the money it claimed without necessarily admitting that he committed the crime charged; for that crime requires the very type of specific intent that he repeatedly disavowed." Id. at 471. The Court explained that if the sentencing court had complied with Rule 11, "there would be no need for such speculation" as the "petitioner's own replies to the court's inquiries on the record would have attested to his understanding of the essential elements of the crime charged" and the acts which formed the basis for the charge. Id.

¶ 15. We have applied a "substantial compliance" standard to Rule 11(c), driven by the purpose of the rule—to ensure knowing and voluntary waivers—rather than any formulaic recitation of elements. See, e.g., In re Thompson, 166 Vt. 471, 475, 697 A.2d 1111, 1113 (1997) ("If the record of the plea hearing, including the trial court's colloquy with the defendant, establishes that the defendant made a knowing and voluntary plea with full understanding of its consequences, then the trial court's failure to explain the nature of the charges . . . does not require reversal of the conviction or sentence"); see also Bridger, 2017 VT 79, ¶ 20 (explaining that "substantial compliance" standard applies to claims under Rules 11(c) and 11(d) "because post-conviction relief is not available for technical or formal violations of these rules, unless the petitioner proves actual prejudice"). Accordingly, there may be cases in which a court can infer defendant's understanding of, and admission to, an unstated element from the defendant's statements on the record. See, e.g., Gabert, 152 Vt. at 88-89, 564 A.2d at 1360 (holding that failure to state implied mental element of charged offenses did not invalidate convictions upon defendant's guilty plea where facts admitted did not allow for possibility that offenses were committed without culpable state of mind). But even if the trial court diligently complies with most of the other requirements of Rule 11, "when the record fails to remove doubt as to whether

6

the petitioner understood the charges at the time of the plea" then relief is available. Thompson, 166 Vt. at 475, 697 A.2d at 1114. The substantial compliance assessment is driven by the purpose of Rule 11(c), and the constitutional imperative that it serves. Although a "technical failure" to review an element of the charge with a defendant does not necessarily invalidate the ensuing conviction upon defendant's guilty plea, the record must demonstrate that, notwithstanding the failure, the defendant's plea was voluntary and knowing as to the elements of the crime to which the defendant pled.

¶ 16. In this case, the absence of any discussion on the record of the mental element of the aggravated domestic assault charge was not merely a technical failing; it left the record devoid of sufficient basis to infer that petitioner's guilty plea to the charge was knowing and voluntary. At no point did the court reference the state-of-mind element. This is not a case in which the record supports an inference that the petitioner understood the volitional element even absent specific instruction by the court.

¶ 17. Nor is the mental element necessarily implicit in the facts to which petitioner did admit. Although she acknowledged that she had shot the victim, the context of her admission left considerable doubt as to whether this admission implicitly included an admission that her conduct was reckless or intentional. In the plea colloquy, she made the statement that she shot the victim after attempting to explain that it was the middle of the night, she was on medication at the time, dogs were barking, and she could not see who was intruding. At that point, her lawyer interrupted, so she provided no further details about the circumstances surrounding the shooting.

¶ 18. The PCR court is right that the facts admitted by petitioner before her counsel interrupted could satisfy the "factual basis" requirement with respect to the "recklessness" requirement, but we cannot conclude from this record, including petitioner's admissions, that she understood what the State had to prove with respect to her intent, or the recklessness of her acts. Nor can we say that "the facts admitted did not allow for the possibility" that she shot the victim

7

without the necessary level of intent or recklessness. The sentencing court should have reviewed the mental element of the charge in any event, but once petitioner began describing circumstances that were inconsistent with an "intent" state of mind, and would not necessarily require a finding of "recklessness," the court should have instructed petitioner specifically as to the requisite state of mind and should have ensured that she understood the elements the State had to prove. In the absence of such further inquiry, the sentencing court's determination that the plea was knowing and voluntary cannot stand. On remand, the PCR court should enter judgment for petitioner on her petition for post-conviction relief.

<u>Reversed and remanded</u>.

FOR THE COURT:

_____

Associate Justice