## STATE OF VERMONT

| | | |
|---|---|---|
| SUPERIOR COURT<br>Washington Unit | 2020 NOV -3 P 3: 19 | CIVIL DIVISION<br>Docket No. 585-9-15 Wncv |

| | |
|---|---|
| Clinton Bedell,<br>Plaintiff<br><br>v.<br><br>State of Vermont,<br>Defendant | DECISION ON MOTION |

### Cross-Motions for Summary Judgment

In this long-pending case, prisoner Mr. Clinton Bedell has sought postconviction relief (PCR) on numerous grounds from his guilty plea to sexual assault on a minor (his daughter) many years ago. In earlier proceedings, the court dismissed all of Mr. Bedell's claims except that his plea was entered involuntarily insofar as he was incompetent due to contemporaneous drug intoxication or overdose, suicidality, and severe mental or cognitive disturbances (the incompetence claim).[1] More recently, he amended the complaint with the State's assent to also assert that the plea was entered in violation of the requirements of V.R.Cr.P. 11 (the Rule 11 claim).[2]

The parties have filed cross-motions for summary judgment on the Rule 11 claim only. Neither seeks summary judgment on the competence claim at this time, and neither includes facts related to Mr. Bedell's competence at the change-of-plea hearing in support of their summary judgment motions on the Rule 11 claim. Rule 11 "advice," V.R.Cr.P. 11(c), and the inquiry into "accuracy," or factual basis, V.R.Cr.P. 11(f), are "inextricably connected to the voluntariness of the defendant's plea." *In re Bridger*, 2017 VT 79, ¶ 11, 205 Vt. 380. By presenting one aspect of the voluntariness question (Rule 11) excised from the context of Mr. Bedell's competence at the time of the change-of-plea hearing, the parties have limited the court's ability to fully and fairly understand the record, and this informs the court's decision on the motions.

---

[1] The transcript of the change-of-plea hearing includes some references to some of these issues but not in great detail.

[2] The amendment specifically asserts a violation of Rule 11(f) only. Without further amendment, Mr. Bedell also has asserted several Rule 11(c) violations in his summary judgment motion. The State briefed both Rule 11(f) and Rule 11(c) claims in its summary judgment papers and has not objected to the lack of further amendment. The court thus accepts the claims as presented in the summary judgment motions despite the more limited scope of the pleadings.

Mr. Bedell claims that the criminal court, in taking his plea, violated: Rule 11(c)(1) by failing to explain the charge; Rule 11(c)(2) by not stating the minimum and maximum potential sentence range; Rule 11(c)(3) by not advising him that he had the right to not plead guilty; and Rule 11(f) by failing to establish a factual basis.

Technical violations of Rule 11(c) are insufficient, on their own, to warrant postconviction relief. The Court has explained:

> "[W]e have always required a practical and functional application of V.R.Cr.P. 11—not as a technical formula, but rather as a guideline to insure fairness to a defendant in the taking of a plea."

> . . . . In [PCR] cases, we have held that the petitioner has the burden of showing that the court's failure to comply strictly with Rule 11 prejudiced him.

> . . .

> Of course, relief in collateral proceedings is not foreclosed in all instances. For example, relief is available when the record fails to remove doubt as to whether the petitioner understood the charges at the time of the plea . . . .

*In re Thompson*, 166 Vt. 471, 474–75 (1997). The case law under Rule 11(f), on the other hand, has evolved, and now, as of the Court's 2017 decision in *Bridger*, clearly requires strict compliance. *In re Barber*, 2018 VT 78, ¶ 1, 208 Vt. 77; *In re Bridger*, 2017 VT 79, ¶ 23, 205 Vt. 380. As explained in *Barber*, however, *Bridger* does not apply retroactively. *Barber*, 2018 VT 78, ¶¶ 12–13. Analysis of Mr. Bedell's Rule 11(f) claim therefore is subject to pre-*Bridger* case law.

Although the Rule 11(c)(1) explanation-of-the-charge issue is distinct, and subject to different standards, from the Rule 11(f) factual-basis issue, the matters nevertheless are closely related because a "truly voluntary" plea requires that "the defendant possess an understanding of the law in relation to the facts." *In re Dunham*, 144 Vt. 444, 449 (1984) (quoting *McCarthy v. United States*, 394 U.S. 459, 466 (1969)); see also *In re Pinheiro*, 2018 VT 50, ¶ 19, 207 Vt. 466 (2018) (clarity of admitted facts may demonstrate sufficient understanding of element otherwise left implicit); *In re Kasper*, 145 Vt. 117, 120–21 (1984). In this case, these matters are better addressed in relation to each other. The court therefore addresses the Rule 11(c)(2) and (3) issues first, and then addresses the Rule 11(c)(1) and (f) claims.

*Rule 11(c)(2) and (3)*

Criminal Rule 11(c)(2) required the court to advise Mr. Bedell of the statutory sentence range on the charge to which he pled. Rule 11(c)(3) required the court to advise Mr. Bedell that he had the right to not plead guilty. Mr. Bedell argues that the transcript of the change-of-plea

2

hearing indicates that the court never clearly told Mr. Bedell the statutory sentence range or that he could choose not to plead guilty. Mr. Bedell was represented by counsel at the change-of-plea hearing, he does not assert any confusion or misapprehension about either issue, and he claims no prejudice.

A review of the transcript of the change-of-plea hearing and the status conference earlier in the day reveals that, at most, Mr. Bedell is asserting technical violations of Rule 11(c)(2) and (3) without any showing of prejudice.[3] He arrived at court the morning of the plea hearing having decided against pleading guilty. Both the court and the prosecutor noted his right to do so despite the practical problems it created for the State regarding the timing of the trial. Later in the day, when entering the guilty plea, he repeatedly noted that he was pleading guilty only on the stipulated condition that other charges would be dropped, as agreed with the State. He clearly knew that he could choose not to plead guilty and proceed to trial.

Mr. Bedell pled guilty to one violation of 13 V.S.A. § 3252(b)(2) (1996), which was punishable by up to 35 years (no statutory minimum). The terms of the plea agreement called for a fixed 6–35 year sentence with no discretion for the trial judge to impose any different sentence (if the agreement was accepted). Both the minimum and maximum were discussed repeatedly during the change-of-plea hearing. The court clearly thought the maximum was appropriate but expressed reluctance at the apparently generous minimum due to the egregiousness of the crime. There is no reasonable way to read the transcript and draw any inference to the effect that Mr. Bedell could have had any misunderstanding about the sentence term he was agreeing to. There is no prejudice.

The State is entitled to summary judgment on these claims.

*Rule 11(c)(1) and (f)*

Rule 11(c)(1) required the criminal court to explain "the nature of the charge to which the plea is offered." Rule 11(f) required the court to make "such inquiry as shall satisfy it that there is a factual basis for the plea" of guilty. Together, it must be clear that the defendant understands the law in relation to the facts and admits those facts that support conviction on the crime charged. Mr. Bedell argues that the criminal court failed to sufficiently explain the nature of the charge and failed to obtain an admission to facts demonstrating a violation.

Regarding the nature of the charge, Mr. Bedell argues that the description of the elements of sexual assault on a minor were left too vague. They were addressed as follows:

> THE COURT: So you're aware . . . that there would be a plea to the charge that during the fall of 1996, that you engaged in a sexual act with another person under the age of 16, to wit, E.B., . . . and that you, the actor, would be at

---

[3] The morning status conference and the afternoon change-of-plea appear in the record as one continuous transcript.

least 18 years of age, reside in the victim's household, and serve in a parental role with respect to the victim, all in violation of 13 V.S.A. Sec. 3252(b)(2).

MR. BEDELL: Yes, Your Honor.

Transcript at 18. The prosecutor later added:

MS. WHITTEN: . . . . As the information sets forth, we charge the defendant with having had sexual contact with his daughter, Ellen, at their family home in Northfield in the fall of 1996. At the time, Ellen was approximately 12 years old. The defendant is her biological father, and at the time of the offense, he resided at the family home in Northfield with Ellen and other members of the family.

Transcript at 22.

Section 3252 applies to a "sexual act" and no one at the hearing ever defined that expression. See 13 V.S.A. § 3251(1) (1996) ("A 'sexual act' means conduct between persons consisting of contact between the penis and the vulva, the penis and the anus, the mouth and the penis, the mouth and the vulva, or any intrusion, however slight, by any part of a person's body or any object into the genital or anal opening of another."). By never explaining what "sexual act" means for purposes of § 3252, the trial court introduced unnecessary ambiguity into the proceeding. The vague expression "sexual act," on its own, could include conduct punishable under § 3252 or not.

As for the factual basis and Mr. Bedell's admission, the transcript reveals the following. The court initially described Mr. Bedell's conduct by saying, "the allegation is that during the fall of 1996, that something occurred." Transcript at 17. Later, the exchanges quoted above occurred, and the prosecutor continued by stating: "The defendant essentially admitted those facts to Detective Mike Schirling during an interview in late November of 1997, and that's set forth in Detective Schirling's affidavit filed with the Court." Transcript at 22. There is no further explanation of what details might be in the affidavit. This then transpires:

THE COURT: . . . . Recognizing that that's what the State—Deputy State's Attorney says that she believes that she would be able to establish, is there anything you wish to say about that?

MR. BEDELL: I was read all the information, Your Honor, and they told me that I would serve up to 6 years plus good time—minus good time. And I agreed with this.

Transcript at 22–23. Mr. Bedell appears to confuse the minimum with the maximum here, although the many references elsewhere to the 35-year maximum make clear that Mr. Bedell understood the potential length of the sentence. Mr. Bedell's response also appears to be

4

somewhat nonresponsive to the factual basis issue the court presumably was attempting to establish. Mr. Bedell's attorney appears to have understood that and intervened.

> MR. KIDNEY: Could I have a second, Your honor?
>
> THE COURT: Sure.
>
> MR. KIDNEY: All right. Just listen to the questions.
>
> THE COURT: And if that was proven to a jury—if the jury heard that, and they believed it, do you think they could also conclude you did what the State is claiming?

Transcript at 23. For Rule 11(f) purposes, this was the wrong question. See *In re Barber*, 2018 VT 78, ¶¶ 35–36, 208 Vt. 77. Mr. Bedell is entering a plea of guilty, which requires an admission of the facts. His speculation about what the prosecutor might be able to persuade the jury to think is the wrong issue—he was not pleading *nolo contendre*. Mr. Bedell's attorney intervened again.

> MR. KIDNEY: Do you understand the question?
>
> MR. BEDELL: I don't understand the question.
>
> MR. KIDNEY: Could I have a second, Your Honor?
>
> THE COURT: Sure.
>
> MR. BEDELL: I admit that that's what happened, Your Honor.
>
> THE COURT: Okay. All right. Then, let's see.
>
> MR. KIDNEY: For the record, Your Honor, I'd say that there is a factual basis.
>
> THE COURT: Okay. Are you satisfied as well?
>
> MR. BEDELL: Yes.

Transcript at 23–24. These exchanges ultimately may be sufficient to support the determination that the factual basis to which Mr. Bedell and his attorney were stipulating was the factual basis described in Detective Schirling's affidavit but they are not as clear as they should have been.

The details of Detective Schirling's affidavit were not recounted orally at the hearing. In it, Detective Schirling describes his interviews of Mr. Bedell and his daughter. It is clear that Mr. Bedell denied having sexual intercourse with his daughter, despite her pregnancy, but the following admissions are clear:

> I met with Bedell and he told me that the incident occurred in late October of 1996. At that time EB was twelve years old. He said that he had been having emotional problems and EB was comforting him. He advised that an incident occurred in which EB removed her clothing. Bedell said that they went to her bedroom where he was kissing her neck and ears and then her breasts and eventually was "stimulating" EB with his tongue on her "clitoris" and "vagina." He told me that he stimulated EB's vagina on three occasions during the incident. At one time during the incident, he took out his penis and EB put it in her mouth for a short time. The incident ended when he rubbed his penis against EB's vagina "up and down five or six times" until he ejaculated on EB's stomach.

Detective Schirling's affidavit ¶ 3 at 1 (dated Nov. 29, 1997). There can be no question but that the affidavit describes sexual acts violating 13 V.S.A. § 3252(b)(2) (1996).

The parties dispute whether, under pre-*Bridger* case law, a stipulation to the facts included in an affidavit is sufficient for Rule 11(f) purposes where those facts are not also recounted orally at the change-of-plea hearing. The court understands pre-*Bridger* case law to permit such a stipulation, at least when it is clear that the stipulation is to the affidavit that includes the material facts. See, e.g., *State v. Cleary*, 2003 VT 9, ¶¶ 29–30, 175 Vt. 142 (2003); *State v. Riefenstahl*, 172 Vt. 597, 599 (2001).

Complicating the issue in this case is the following. The trial court's description of the elements of the charge was vague to the extent that it provided no explanation of what "sexual act" meant. The sexual acts described in Detective Schirling's affidavit unambiguously fell within the scope of 13 V.S.A. § 3252(b)(2). Nothing else said at the change-of-plea hearing introduced any further ambiguity as to whether anyone may have been contemplating any other sort of sexual act in specific. Together, this could well satisfy the requirement for a Rule 11(c)(1) description of the nature of the charge.

However, the record is not as clear as it should have been that the factual basis to which both Mr. Bedell and his attorney stipulated was in fact the factual basis described in the affidavit. The prosecutor mentioned the affidavit without describing its details. The court then asked a confusing question about what the jury might be persuaded to believe without obviously referring to the affidavit or any description of its details. Mr. Bedell's attorney clearly recognized that there was confusion, and Mr. Bedell expressly said that he was confused. Then, presumably after conferring, both Mr. Bedell and his attorney essentially said that there is a factual basis without clearly referring to the affidavit or its details.

The transcript may be sufficient to support an inference that in fact they were referring to the affidavit, and thus they made a sufficient stipulation to the factual basis for Rule 11(f) purposes. However, the record of this case is further clouded by Mr. Bedell's other involuntariness claim—that he was incompetent at the time of the change-of-plea hearing due to mental and emotional problems, suicidality, and some kind of experience with drugs from which he was still recuperating. Mr. Bedell has not withdrawn that claim, and the parties have not developed the record on it for present purposes. Thus, the court is unable to incorporate it into the Rule 11 analysis.

The parties seek summary judgment on the Rule 11(c)(1) and Rule 11(f) issues. The summary judgment record does not disclose any simple disputes of material fact, but it appears to be incomplete and likely would include factual disputes were it expanded to encompass Mr. Bedell's incompetence claim. To support summary judgment, the material facts must be both undisputed and sufficient to support judgment as a matter of law. As observed in one treatise, "Before the court can apply the law, it must have an adequate factual basis for doing so. In some situations, a fuller development of the facts may serve to clarify the law or help the court determine its application to the case. As a result, the resolution of complex questions of law frequently requires a more concrete factual development than may be obtained through summary proceedings." 10A Wright & Miller et al., Fed. Prac. & Proc. Civ. § 2725 (4th ed.).

Such is the case here. The court concludes that the Rule 11(c)(1) and Rule 11(f) issues will be more effectively addressed on the evidence at trial on a record that includes any evidence related to Mr. Bedell's other voluntariness issue—competence. Summary judgment therefore is denied as to these issues.

Order

For the foregoing reasons, Mr. Bedell's summary judgment motion is denied. The State's cross-motion for summary judgment is granted in part and denied in part.

Set for Status conference as to how much time will be needed for evidentiary hearing.



Robert R. Bent,
Judge